Jason J. Kim (State Bar No. 221476)
kimj@Hunton.com
Hakop Stepanyan (State Bar No. 296782)
hstepanyan@Hunton.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

Attorneys for Defendant VENETIAN LAS VEGAS GAMING, LLC

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MAX VASQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VENETIAN LAS VEGAS GAMING, LLC,<br><br>Defendant. | Case No. 5:25-cv-07934-PCP<br><br>Honorable P. Casey Pitts<br><br>**DEFENDANT VENETIAN LAS VEGAS GAMING, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Request for Judicial Notice and Declaration of Soundarapandian Karunamoorthy filed concurrently herewith]<br><br>Date: January 15, 2026<br>Time: 10:00 a.m.<br>Crtm: 8 |

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on January 15, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the above-entitled Court located at 280 South 1st Street, San Jose, California, Defendant Venetian Las Vegas Gaming, LLC will, and hereby does, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move this Court for an order dismissing this lawsuit in its entirety.

This motion is based on Plaintiff's failure to state a claim upon which relief can be granted with regard to his claims for violations of Section 631(a) and 632 of the California Invasion of Privacy Act. *First*, Plaintiff consented to the collection and sharing of the data in question, thus dooming both of his claims. *Second*, Plaintiff cannot show Venetian violated—or aided in the violation of—Section 631(a). *Third*, Plaintiff cannot show any of his alleged "communications" with Venetian were confidential within the meaning of Section 632. Because Plaintiff cannot remedy those defects, the Court should dismiss this lawsuit in its entirety and with prejudice.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and Declaration of Soundarapandian Karunamoorthy filed concurrently herewith, all the pleadings and papers on file herein, and on such other evidence and argument as may be presented at the hearing on this matter.

Dated: November 10, 2025

**HUNTON ANDREWS KURTH LLP**

By: *_/s/ Jason J. Kim_*
Jason J. Kim
Hakop Stepanyan
Attorneys for Defendant
VENETIAN LAS VEGAS GAMING, LLC

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. STATEMENT OF ISSUES TO BE DECIDED ....... 3

III. STATEMENT OF FACTS ....... 3

IV. THE RELEVANT LEGAL STANDARDS ....... 7

A. Plaintiff's Pleading Burden ....... 7

B. The Rule Of Lenity Applies To Plaintiff's Claims ....... 7

V. PLAINTIFF'S CONSENT BARS BOTH OF HIS CLAIMS ....... 8

A. Venetian's Privacy Notice Disclosed The Challenged Practices ....... 8

B. Plaintiff Assented To Venetian's Privacy Notice On Multiple Occasions ....... 9

1. Plaintiff First Assented To The Privacy Notice Via The Cookie Banner Prominently Displayed On Venetian's Homepage ....... 9

2. Plaintiff Had To Assent To The Privacy Notice Yet Again Before He Could Confirm His Room Reservation ....... 10

VI. BOTH OF PLAINTIFF'S CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS ....... 11

A. Plaintiff's Section 631(a) Claim Fails ....... 11

1. Clause One ....... 12

2. Clause Two ....... 12

3. Clause Three ....... 12

4. Clause Four ....... 13

a) Plaintiff Cannot Show An Underlying Violation By The Third Parties ....... 13

b) Plaintiff Cannot Show Venetian Aided Any Alleged Violation ....... 15

B. Plaintiff's Section 632 Claim Fails ....... 16

VII. CONCLUSION ....... 18

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ....7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....7

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....16, 17

*Doe v. Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .... *passim*

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....2, 16

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) ....12

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....16

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....17

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....14

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) .... *passim*

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ....5, 9, 10, 11

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ....11, 12

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....6




Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....................14

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)....................1

*People v. Nakai*,
183 Cal. App. 4th 499 (2010)....................17

*Ramos v. Gap, Inc.*,
2025 WL 2144837 (N.D. Cal. July 29, 2025)....................14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................16, 17

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)....................3, 16

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021)....................16

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................8

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................8

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)....................2, 16

*Snyder v. G6 Hosp. LLC*,
2025 WL 1254382 (C.D. Cal. Apr. 14, 2025)....................14

*Snyder v. G6 Hosp. LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025).................... *passim*

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023)....................12

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)....................15

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....................12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................13, 14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................13, 14

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**Statutes**

Cal. Penal Code § 631 ........ *passim*

Cal. Penal Code § 632 ........ 3, 7, 16, 17

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

By this lawsuit, Plaintiff claims Defendant Venetian Las Vegas Gaming, LLC ("Venetian") violated a statute enacted in 1967—the California Invasion of Privacy Act ("CIPA")—based on the everyday, ordinary use of online analytical tools that allegedly collect innocuous button clicks, URL headers, and phonebook-style contact information. As Judge Chabbria recently held, CIPA "was drafted with very different technology in mind," "it does not map properly onto the internet," and "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe v. Eating Recovery Center LLC*, 2025 WL 2971090, at *1, 5 (N.D. Cal. Oct. 17, 2025).

Ignoring those precepts, Plaintiff strives mightily to exalt the data at issue here by labeling it "guest records," to no avail. No matter the spin Plaintiff puts on it, button clicks, URL headers, and contact information all fall outside the scope of the CIPA provisions under which he brings suit, and Plaintiff consented to the collection and sharing of that data in any event.

Plaintiff's counsel learned both of those hard truths when it attempted to bring the same "guest records" claims against hotel operators in two prior lawsuits. The courts in both of those cases dismissed the claims at the pleading stages for reasons equally applicable here. *Snyder v. G6 Hosp. LLC*, 2025 WL 2426613, at *5 (C.D. Cal. Aug. 18, 2025) (dismissing near-identical lawsuit because plaintiff consented to alleged data collection and sharing); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing near-identical lawsuit because "guest records" do not amount to actionable "content" under CIPA).[1]

As an initial matter, Plaintiff consented to the alleged practices at issue on multiple occasions when he allegedly booked a room at a Venetian property—once when he landed on Venetian's homepage in the form of a conspicuous cookie banner, and once again before he confirmed the booking of his room. Because Plaintiff cannot show a lack of consent with respect to the practices in

[1] *Cf. Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *4 (C.D. Cal. Oct. 4, 2024), adopted as modified, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024) (however, court did not decide the issue of consent or consider whether "guest records" are actionable "content").

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

question, the analysis ends there. *Snyder*, 2025 WL 2426613, at *5 (dismissing near-identical "guest records" claims with prejudice because plaintiff consented to challenged practices).

While Plaintiff's consent alone dooms his claims, the defects in his complaint run far deeper:

<u>The Section 631(a) Claim</u>. Plaintiff does not claim Venetian itself violated Section 631(a). Rather, Plaintiff claims Venetian aided and abetted others in doing so. Plaintiff, however, cannot show any of the Third Parties[2] alleged in the complaint violated Section 631(a)—much less that Venetian knowingly aided and abetted such nonexistent violations.

*First*, the data in question does not rise to the level of actionable "content" under Section 631(a), as another court recently held in a near-identical "guest records" lawsuit brought by Plaintiff's counsel. *King*, 2025 WL 1635419, at *4 (actionable "content" does not include "'guest records' including the address, telephone number, email address, or zip code;" "button clicks;" "full-string URLs").

*Second*¸ Plaintiff has not shown the Third Parties read, attempted to read, or attempted to learn the contents of any communication between Plaintiff and Venetian while that communication was "in transit." *Eating Recovery Center LLC*, 2025 WL 2971090, at *1. The Third Parties "have to do something more than just intercept the contents of the communication or redirect them." *Id.* at *5. And yet, Plaintiff pleads nothing beyond that.

*Third*, and even if the Third Parties violated Section 631(a) (which they did not), Plaintiff cannot show Venetian knowingly aided and abetted any such violation. "By its plain terms, [Section 631(a)] does not cover … a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024). And here, Plaintiff has not shown Venetian "aided, agreed with, or employed the [Third Parties] to perform acts that violate the wiretapping statute" merely by using the Third Parties' code on its website. *Id.*; *see also Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (allegation that "Defendant embedded [third party]'s software code into its website"

[2] The complaint defines "Third Parties" to mean Heap Inc., Google LLC, and Meta Platforms, Inc.

deemed insufficient); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (allegation that "Defendant plugged [third party]'s Application Programming Interface into its website" deemed insufficient). To the contrary, Venetian fully disclosed such practices in its Privacy Notice, to which Plaintiff assented on multiple occasions. If Venetian truly wanted the Third Parties to secretly record "communications" with Plaintiff, it would have kept that fact secret from Plaintiff. Here, however, Venetian fully disclosed any collection and sharing of data.

The Section 632 Claim. Plaintiff also cannot state a claim under Section 632. As courts have roundly held, internet communications are not "confidential" within the meaning of Section 632. *King*, 2025 WL 1635419, at *5. Relabeling them as "guest records" does not change that fact. *Id.* (dismissing near-identical "guest records" claim under Section 632).

This is not the first time Plaintiff's counsel has brought these types of "guest records" claims against a hotel operator. And yet, the defects cited by other courts that have dismissed them remain on full display here. At this juncture, it is plain that further attempts to state such claims would be futile. The Court can and should dismiss this latest attempt in its entirety and with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiff's claims can survive dismissal given his consent to the practices alleged, whether Plaintiff otherwise states claims under Sections 631(a) and 632 of CIPA, and whether leave to amend would be futile, particularly given the prior decisions issued in near-identical "guest records" cases.

## III. STATEMENT OF FACTS

Venetian owns and operates the website VenetianLasVegas.com (the "Website"). Compl. ¶ 2. Plaintiff claims he visited the Website "[s]everal times, including on or around September 18, 2024." *Id.* ¶ 4. During the relevant time period of September 18, 2024 through the present, upon first landing on the Website, Plaintiff would have confronted a prominent, persistent "cookie banner" that notified him of the very practices about which he complains:

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627




Request for Judicial Notice ("RJN"), Exh. A; Declaration of Soundarapandian Karunamoorthy ("Karunamoorthy Decl.") ¶¶ 3, 4. That banner, which is set apart in a white box against a contrasting darker background explicitly states that Venetian "and third parties use cookies and similar technologies that may collect and share information about your use of our site"—*i.e.*, the precise thing Plaintiff complains about here. The banner further informed Plaintiff that his use of the site would manifest his assent to such practices. The banner also told Plaintiff he could learn "more details" about such "practices" by reading Venetian's "Privacy Notice," which is hyperlinked in the banner, underlined, and offset even further in bright red text. The banner "floats" on the webpage even if a user scrolls through the page, and the banner persists on the webpage until a user takes some action, such as clicking a button to be taken to another webpage. Karunamoorthy Decl. ¶ 4.

After receiving such notice, Plaintiff could use the Website to browse and book Venetian hotel rooms. Plaintiff, however, could not have completed any hotel reservation unless he agreed again to Venetian's Privacy Notice. Plaintiff purports to show an image of the webpage where he allegedly entered his information to book a room. Compl. ¶ 33. Plaintiff, however, selectively omits that portion of the webpage that further establishes his assent to the practices about which he complains. Immediately below the portion Plaintiff opts to show the Court—and immediately above the "Complete Reservation" button—is the following disclosure:




RJN, Exhs. B, C; Karunamoorthy Decl. ¶¶ 5, 6. In order for the "Complete Reservation" button to become active, Plaintiff had to click the button next to the statement, "I accept the Terms & Conditions." Karunamoorthy Decl. ¶ 6. The hyperlink to the Terms & Conditions are underlined and offset in bright red font. Moreover, the Terms & Conditions expressly incorporate and provide a link to the Privacy Notice in a contrasting red color, along with the following disclosure: "You understand that we collect, store, and otherwise process personal information about our guests and visitors related to their reservation, stay, and other interactions with us during their visit. To learn more about our information practices, read our Privacy Notice." RJN, Exhs. F, G.

Beyond that still, Venetian notified Plaintiff again about its Privacy Notice by informing him—directly above the "Complete Reservation" button—that "[b]y completing your reservation, you will receive emails about your reservation and stay with us. For more information about our information practices and your rights, read our Privacy Notice." RJN, Exhs. B, C. And once again, "Privacy Notice" is hyperlinked and offset in underlined text.

Had Plaintiff actually reviewed Venetian's Privacy Notice, he would have seen a robust set of disclosures regarding the very practices about which he complains—from the types of data collected to the manner in which it is collected and shared with others. Among other things, Venetian's Privacy Notice (RJN, Exh. D)[3] discloses:

[3] The Court may take judicial notice of the Privacy Notice, the banner, and the checkout webpage because they are "either incorporated or relied upon in the complaint, or capable of being accurately and readily determined from sources whose accuracy cannot be questioned." *See L.B. v. LinkedIn*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

- "This Privacy Notice applies to personal information we obtain, including: through our websites, social media pages, and other digital platforms we operate or control, whether directly or indirectly via third parties, that reference this Privacy Notice, including www.venetianlasvegas.com (collectively, the 'Online Channels')."
- "We collect personal information about you," including "when you visit our websites." It specifies what information may be collected: "Contact information such as name, email address, postal address, fax number, and telephone number," "[p]urchase and transaction information such as information about your visits," "[d]evice information such as geolocation data," and "[d]ata collected by cookies and similar technologies such as clickstream data and other information about your online activities, devices, browsing actions, and usage patterns across the Online Channels and third-party website."
- "We and certain third parties use cookies, web beacons (including pixels and tags), web server logs, and similar technologies on our Online Channels that collect certain information about you by automated means," including "information about your devices, browsing actions, and usage patterns."
- "The information we obtain in this manner includes IP address, device ID, and other identifiers associated with your device, device type, device characteristics (such as operating system), the pages you visited on our websites, how you arrived at our websites, browser preferences and characteristics, clickstream data, your interactions with our Online Channels, and other information about your online activities."
- "With respect to analytics cookies, we use third-party analytics services on our Online Channels, such as those of Google Analytics. To learn more about Google

---

*Corp.*, 2025 WL 2899514, at *1 (N.D. Cal. Oct. 10, 2025) (taking judicial notice of privacy policy, banner, and several pages of the website). The incorporation by reference doctrine protects against precisely what Plaintiff does here, namely, "selecting only portions of [webpages] that support [his] claims, while omitting portions of those very [webpages] that weaken—or doom—[his] claims." *See McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *2 (N.D. Cal. Feb. 2, 2021).



Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

> Analytics and how to opt out, visit: https://policies.google.com/technologies/partner-sites."[4]

Notwithstanding those robust disclosures, Plaintiff implausibly claims Venetian installed tracking technologies from "Third Parties" that collected his "guest records" *without his consent*—contact information (name, address, email, phone number), button clicks during the room-reservation process (selecting the date of the reservation, number of rooms, numbers of adults and children, and the particular tower and room type), and the URL of webpages visited within the Website. Compl. ¶¶ 2, 23, 64-80, 85. Based on those allegations, Plaintiff claims Venetian violated Sections 631(a) and 632 of CIPA. *Id.* ¶¶ 97-121. And he purports to bring those claims on behalf of a sprawling class of "all California residents who have accessed and navigated the Website while in California." *Id.* ¶ 89.[5]

## IV. THE RELEVANT LEGAL STANDARDS

### A. Plaintiff's Pleading Burden

To survive dismissal, Plaintiff must allege a "plausible" basis for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Rather, Plaintiff must plead facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "sheer possibility" of liability will not do. *Id.*

### B. The Rule Of Lenity Applies To Plaintiff's Claims

Plaintiff brings both of his claims under provisions of the California Penal Code. Where, as here, "courts are called upon to interpret ambiguous criminal statutes in California, the rule of lenity

---

[4] The Privacy Notice that was used when Plaintiff visited the Website on September 18, 2024 contains identical or substantially similar language. *See* RJN, Exh. E.

[5] Plaintiff's proposed class definition overshoots by a mile and then some. While all putative class members will have consented to the collection and sharing of data as soon as they land on Venetian's homepage, not all of them will have visited—much less interacted with—all of the relevant webpages cited in Paragraphs 30 through 33 of the complaint. As such, Plaintiff's own allegations raise a host of individualized inquiries regarding each putative class member's journey through the Website that render class certification impossible.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

applies—even when the statute is being invoked in a civil action." *Eating Recovery Center LLC*, 2025 WL 2971090, at *1. Under that rule, courts are "supposed to narrowly construe civil statutes that impose punitive civil penalties." *Id.* Indeed, Judge Chhabria recently applied the rule of lenity to "adopt a narrower" interpretation of CIPA, holding that "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Id.*

Applying those precepts, Plaintiff has not and cannot state claims against Venetian.

## V. <u>PLAINTIFF'S CONSENT BARS BOTH OF HIS CLAIMS</u>

Both of Plaintiff's claims require him to show a lack of consent. *Snyder*, 2025 WL 2426613, at *2 (lack of consent is an element of a CIPA claim); *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (affirming motion to dismiss based on consent). Plaintiff cannot possibly make that showing here because: (1) Venetian's Privacy Notice disclosed the collection and sharing of the data in question; (2) Plaintiff assented to Venetian's Privacy Notice on multiple occasions when he visited the Website and booked a room.[6]

### A. <u>Venetian's Privacy Notice Disclosed The Challenged Practices</u>

There is no question Venetian's Privacy Notice (RJN, Exh. D) discloses the data practices in question. It plainly states that "[w]e collect personal information about you," including "when you visit our websites." It specifies what information may be collected: "Contact information such as name, email address, postal address, fax number, and telephone number," "[p]urchase and transaction information such as information about your visits," "[d]evice information such as geolocation data," and "[d]ata collected by cookies and similar technologies such as clickstream data and other information about your online activities, devices, browsing actions, and usage patterns across the Online Channels[7] and third-party website."

The Privacy Notice also discloses the use of cookies and similar technologies: "We and certain third parties use cookies, web beacons (including pixels and tags), web server logs, and similar technologies on our Online Channels that collect certain information about you by automated

[6] "Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021).

[7] "Online Channels" is defined to include, *inter alia*, www.venetianlasvegas.com.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

means," including "information about your devices, browsing actions, and usage patterns." It specifies that "[t]he information we obtain in this manner includes IP address, device ID, and other identifiers associated with your device, device type, device characteristics (such as operating system), the pages you visited on our websites, how you arrived at our websites, browser preferences and characteristics, clickstream data, your interactions with our Online Channels, and other information about your online activities."

Based on those disclosures, any "reasonable [Venetian] user would have understood that [Venetian's] data collection included the dates of the trip, number of guests, and username, which Plaintiff alleges each constitute a 'guest record.'" *Snyder*, 2025 WL 2426613, at *4 (dismissing CIPA claim based on similar alleged data collection and similar privacy policy disclosures).

**B. <u>Plaintiff Assented To Venetian's Privacy Notice On Multiple Occasions</u>**

As shown above, Plaintiff assented to Venetian's Privacy Notice on multiple occasions—once when he landed on Venetian's homepage, and once before he confirmed his room reservation.

**1. Plaintiff First Assented To The Privacy Notice Via The Cookie Banner Prominently Displayed On Venetian's Homepage**

Plaintiff first assented to Venetian's Privacy Notice when he landed on Venetian's homepage and a cookie banner notified him of the Privacy Notice and the practices about which he complains.

Whether Plaintiff actually read Venetian's Privacy Notice is irrelevant; constructive assent is sufficient. So long as Venetian provided Plaintiff reasonable notice of its Privacy Notice, he is bound. *L.B.*, 2025 WL 2899514, at *8. And here, Venetian provided such notice—right when Plaintiff landed on Venetian's homepage, where a cookie banner expressly disclosed the Privacy Notice in bright-red, underlined font and told him Venetian "and third parties use cookies and similar technologies that may collect and share information about your use of our site." RJN, Exh. A.

"Cookie banners" such as the one employed by Venetian "create constructive notice if the terms are reasonably conspicuous." *L.B.*, 2025 WL 2899514, at *9. "Reasonably conspicuous notice requires that the notice is displayed in a font size and format such that the court can fairly

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

assume that a reasonably prudent Internet user would have seen it, and if there is a hyperlink, the fact that a hyperlink is present must be readily apparent." *Id.* (quotations omitted).

Venetian's cookie banner provided ample notice to bind Plaintiff. It "is written in clear font," and it is presented "in a contrasting [white] box" against a dark backdrop with "no surrounding clutter." *L.B.*, 2025 WL 2899514, at *10. Venetian's cookie banner "clearly informs users in plain language that continued use of the website constitutes acceptance." *Id.* Moreover, Venetian's Privacy Notice "is underlined" and presented in a bright-red font that stands out prominently from surrounding text. *Id.* On those facts, there is no question "that a reasonably prudent internet user would see the notice and understand that the continued use of the website constitutes agreement to the [Privacy Notice], and that '[Privacy Notice]' is a hyperlink that ultimately leads to the terms of the [Privacy Notice]." *Id.*

Having had ample notice of the practices in dispute, Plaintiff cannot possibly complain now.

**2. Plaintiff Had To Assent To The Privacy Notice Yet Again Before He Could Confirm His Room Reservation**

While constructive assent via the cookie banner is sufficient to dispose of Plaintiff's claims, there is more. Plaintiff had to assent to Venetian's Privacy Notice yet again before he could complete his room reservation.

After Plaintiff selected the dates of his stay and the type of room he wanted to reserve, he would have arrived at the "Guest Billing Information" screen that is partially depicted in Paragraph 33 of the complaint. As shown above, however, Plaintiff's complaint omits the full story. *See* RJN, Exhs. B, C. Plaintiff could not complete his reservation without acknowledging his agreement to Venetian's Terms & Conditions (which expressly incorporated the Privacy Notice) and being told, yet again, that he could obtain "more information about [Venetian's] information practices and [his] rights" in Venetian's Privacy Notice. RJN, Exhs. B, C, F, G; Karunamoorthy Decl. ¶ 6.

In fact, Venetian provided even greater notice to Plaintiff about the Privacy Notice and the practices of which he complains than that which a court deemed sufficient in another "guest records" lawsuit filed by Plaintiff's counsel. *Snyder*, 2025 WL 2426613, at *4. In *Snyder*, the court found similar disclosures established consent, even though (and unlike here), the "particular policy at issue

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

[wa]s only accessible by clicking a separate link." *Id.* at *3. In that case, a "user is required to affirmatively check a box that states 'I agree to rate and room policies of this reservation.*' before being able to confirm the booking." *Id.* The asterisk at the end of this affirmation corresponded to the "*Policies" section directly below the "Confirm Booking" button, which had a drop-down menu with a hyperlink titled, "View the Motel 6 Privacy Policy." *Id.* at *4. According to the court, "by clicking the box agreeing to 'rate and room policies,' the user was agreeing to all policies including the 'Privacy Policy.'" *Id.*

Here, notice of Venetian's Privacy Policy is even more prominent. Rather than affirming unspecified policies, users must click a button to affirm acceptance of Venetian's "Terms & Conditions"—which expressly incorporate and provide a link to the Privacy Notice in a contrasting red color—in order for the "Complete Reservation" button to become active. RJN, Exhs. B, C, F, G; Karunamoorthy Decl. ¶ 6. Moreover, instead of hiding the Privacy Notice in a dropdown menu, Venetian discloses it openly in the cookie banner, the Terms & Conditions, *and* immediately above the "Complete Reservation" button. RJN, Exhs. A-C, F, G.

By all counts and under any measure, a "reasonable user who viewed [all those collective] disclosures [would] have understood that [Venetian] was collecting [the information at issue]." *L.B.*, 2025 WL 2899514, at *4. Plaintiff's consent to the alleged practices dooms his claims, and he cannot plead around that indisputable fact. The Court should dismiss this lawsuit with prejudice.

## VI. <u>BOTH OF PLAINTIFF'S CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS</u>

Even if Plaintiff did not consent to the practices alleged (and he did), his claims fail nonetheless for additional, independent reasons.

### A. <u>Plaintiff's Section 631(a) Claim Fails</u>

Section 631(a) "contains three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping,' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Because Venetian is a party to

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

the allegedly online "communications," his claims necessarily fall outside the ambit of the first three clauses of Section 631(a).

While "Section 631(a) further contains a fourth basis for liability, for anyone "'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability," Plaintiff cannot show an underlying violation of Section 631(a) by the Third Parties—much less that Venetian aided and abetted such nonexistent violations. *Mastel*, 549 F. Supp. 3d at 1134.

**1. Clause One**

Plaintiff cannot show Venetian violated the first clause of Section 631(a) because that provision "concerns telephonic wiretapping specifically" and "does not apply to the context of the internet." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (collecting cases). And here, Plaintiff complains of allegedly online "communications" only.

**2. Clause Two**

Plaintiff cannot show Venetian violated the second clause because he admits Venetian is a party to the alleged "communications" at issue. *See* Compl. ¶¶ 79, 102. As multiple courts have held, Venetian cannot eavesdrop on its own communications. *Swarts v. Home Depot, Inc*., 2023 WL 5615453, at *6 (N.D. Cal. Aug. 30, 2023); *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *In re Facebook Internet Tracking Litig*., 263 F. Supp. 3d 836, 845 (N.D. Cal. 2017) (dismissing CIPA claims where defendant did not "intercept or eavesdrop on communications to which it was not a party").

**3. Clause Three**

Because Plaintiff has not and cannot show a violation of the first two clauses, he cannot allege a violation of the third. *Mastel*, 549 F. Supp. 3d at 1137 ("Because the court concludes that Mastel has failed to state a claim under either clause 1 or 2, his claim that Miniclip violated § 631(a)'s third clause fails as a matter of law."). And it would be absurd to hold Venetian liable for using the data for the very purpose Plaintiff reached out to Venetian—to book a room.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**4. Clause Four**

Plaintiff cannot show Venetian aided and abetted a violation of Section 631(a) because he fails even to show an underlying violation by any Third Parties—much less that Venetian aided and abetted such violation.

*a) Plaintiff Cannot Show An Underlying Violation By The Third Parties*

Plaintiff claims the Third Parties violated Section 631(a) by transmitting data collected during his Website visit to themselves. Compl. ¶ 35. But that alone does not amount to a violation of Section 631(a) by the Third Parties. Rather, Plaintiff must show: (1) the Third Parties obtained the "contents" of Plaintiff's alleged communications with Venetian; *and* (2) the Third Parties read, attempted to read, or attempted to learn the contents of Plaintiff's alleged communications while they were "in transit." *Eating Recovery Center LLC*, 2025 WL 2971090, at *4. Plaintiff cannot show either.

*First*, there are no "contents." "Contents" means "the intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (Section 631(a) "protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not").

Here, Plaintiff claims the Third Parties collected contact details (name, address, email, phone number), button clicks, and the URL of webpages he visited within the Website. Compl. ¶¶ 23, 64-80. That type of "record information" falls squarely outside the scope of Section 631(a).

*King*, 2025 WL 1635419, is directly on point. Just like here, the plaintiff in *King* claimed a hotel operator aided Meta in violating Section 631(a) by embedding Meta Pixel into its website, which collected the same types of "guest records" at issue here—*i.e.*, "name, address, telephone number, credit card number, email address, ZIP code, and user-specific values contained in [Meta] cookies)," "[w]ebsite users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, and the particular hotel section or tower in which they wish to stay," and "the

URL of webpages visited by [w]ebsite users." *Id.* at *1. The court rejected the plaintiff's claim that such information amounted to "content" under CIPA and dismissed her Section 631(a) claim accordingly. *Id.* at *4.

Examining the various data elements, the Court held that "'guest records' including the address, telephone number, email address, or zip code of Website users … constitutes 'record information.'" *King*, 2025 WL 1635419 at *4; *see also In re Zynga Priv. Litig.*, 750 F.3d at 1106 ("contents" under CIPA does not include customer record information such as name or address); *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) ("Generally, customer information such as a person's name, address, and subscriber number or identity is record information …").

Similarly, the court held that "button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of adults and children who will be traveling, and the particular hotel section or tower in which they wish to stay" are "more akin to the 'record' information that the Ninth Circuit has held not to be contents of a communication." *King*, 2025 WL 1635419 at *1, 4; *see also Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests" are "record information"); *Yoon*, 549 F. Supp. 3d at 1082 ("mouse clicks" and "pages viewed," "the date and time of the visit," "the duration of the visit," "location at the time of the visit," "browser type," and "the operating system on [the] device" are "record information").

Likewise, the court held that URLs reflecting selections made during the room reservation process do not constitute "contents" of communications. *King*, 2025 WL 1635419, at *4; *see also Ramos v. Gap, Inc.*, 2025 WL 2144837, at *5 (N.D. Cal. July 29, 2025) ("URLs [that] are merely proxies for the specific image or words clicked on by the recipient" are "not protected content").[8]

---

[8] Venetian fully anticipates Plaintiff will rely on *Snyder v. G6 Hosp. LLC*, 2025 WL 1254382 (C.D. Cal. Apr. 14, 2025) to argue "contents" are alleged. Such reliance would be misplaced. In that case, the data at issue included users' searches, which Plaintiff does not allege here. In any event, the court dismissed the CIPA claim based on consent, which the Court should do so here. Indeed, the



Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Second*, Plaintiff fails to plausibly allege the Third Parties actually read, attempted to read, or attempted to learn any contents while they were "in transit." The Third Parties "must do something more than just intercept the communication while it is in transit to be held liable." *Eating Recovery Center LLC*, 2025 WL 2971090, at *6. They must actually "read, attempt to read, or attempt to learn the contents of [Plaintiff]'s communications with [Venetian] while those communications were in transit." *Id.* at *7; *see also Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Even if TrustedForm software intercepts the contents of Plaintiffs' communications in real time and stores the recording on an ActiveProspect server that ActiveProspect employees can access, nothing in the record plausibly indicates that ActiveProspect reads or attempts to read the contents of the communication *while they are in transit*."). Plaintiff does not and cannot do so here.

Rather, Plaintiff merely claims the Third Parties intercept Website users' communications "in transit." Compl. ¶ 35 (alleging that "within milliseconds," the tracking technologies send instructions to a Website user's browser, then cause the browser to simultaneously duplicate the user's Website communications, transmitting these communications to both the Third Parties' servers and to Venetian). That says nothing about whether the Third Parties actually read, attempt to read, or attempt to learn the "contents" of any alleged communications while they are "in transit." As in *Eating Recovery Center* and *Torres*, that omission is fatal.

Because Plaintiff has not shown the Third Parties violated Section 631(a), he cannot possibly show Venetian "aided" or "conspired" with them. *Eating Recovery Center LLC*, 2025 WL 2971090, at *4. Accordingly, Plaintiff's claim under the fourth clause of Section 631(a) fails.

*b) Plaintiff Cannot Show Venetian Aided Any Alleged Violation*

Even if the Third Parties had violated Section 631(a) (and they did not), Plaintiff cannot show Venetian "aid[ed], agree[d] with, employ[ed], or conspire[d]" with them. Venetian did not knowingly help anyone violate CIPA.

---

*Snyder* court ultimately dismissed the CIPA claim with prejudice on those same grounds. *See Snyder*, 2025 WL 2426613.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

To establish the "aiding" of a CIPA violation, Plaintiff must show Venetian knew the Third Parties were violating Section 631(a) and substantially assisted that violation. *Esparza*, 2024 WL 559241, at *6. Plaintiff cannot do so here.

At most, Plaintiff claims Venetian embedded the Third Parties' software into the Website. Compl. ¶¶ 63-80. As multiple courts have held, merely using third party tools and software is not enough. *See, e.g.*, *Esparza*, 2024 WL 559241, at *6 (allegation that "Defendant embedded [third party]'s software code into its website" deemed insufficient); *Ford Motor Co.*, 722 F. Supp. 3d at 1124 (allegation that "Defendant plugged [third party]'s Application Programming Interface into its website" deemed insufficient); *YETI Coolers, LLC*, 754 F. Supp. 3d at 943 (same). Yet that is all Plaintiff alleges.

Even more fundamental, Venetian fully disclosed the practices about which Plaintiff complains—and it did so at multiple turns. It is utterly implausible to suggest Venetian secretly conspired with the Third Parties to steal Plaintiff's data when it told him about the collection and sharing of such data through robust disclosures that Plaintiff seemingly chose to ignore.

In the end, Plaintiff has not and cannot show Venetian violated any of the four clauses of Section 631(a). The Court should dismiss Plaintiff's 631(a) claim with prejudice.

### B. <u>Plaintiff's Section 632 Claim Fails</u>

To state a Section 632 claim, Plaintiff must show Venetian "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, … by means of a telegraph, telephone, or other device, except a radio." Plaintiff cannot do so here.

Plaintiff fails even to allege a "confidential" communication within the meaning of Section 632. A communication is confidential under Section 632 only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)). And courts roundly have held that "Internet communications do not reasonably give rise to that expectation" of confidentiality. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications."); *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013) ("Some decisions from the California appellate courts … suggest that internet-based communication cannot be confidential.").

Try as he may, Plaintiff cannot overcome that presumption. Plaintiff claims he expected privacy with respect to alleged communications with Venetian because they allegedly "contain sensitive and confidential 'guest records,' as defined by Cal. Civil Code § 53.5." Compl. ¶ 115, 119. Section 53.5(i), however, explicitly permits the sharing of such information by business entities with third parties for business-related purposes. And here, Plaintiff admits Venetian shared data with the Third Parties for business-related purposes. *Id.* ¶ 50 (alleging data shared with Heap to "[g]raph conversion events, build funnels, track retention, and figure out which growth levers influence [Defendant's] business the most"); ¶ 52 ("Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]"); ¶ 59 ("Meta Pixel can be used to help 'measure ad effectiveness'; 'define custom audiences for ad targeting'; and support 'Advantage+ catalog ads campaigns[.]'").

Beyond that still, "guest records" are not *per se* confidential within the meaning of Section 632. There is nothing about the type of information collected here—*i.e.*, contact and room booking information—that warrants deviating from the general rule that internet communications are not "confidential." *See Revitch*, 2019 WL 5485330, at *3 ("Nothing about these particular internet communications—inquiring about items of clothing on a retail website—warrants a deviation from this general rule."); *Campbell*, 77 F. Supp. 3d at 849 (dismissing Section 632 claim based on scanned Facebook messages); *In re Google Inc.*, 2013 WL 5423918, at *23 (email communications are not "confidential" within the meaning of Section 632).

Above all, Plaintiff could not have had a reasonable expectation of privacy because, as discussed above, Venetian's Privacy Notice discloses the data collection and sharing alleged in the Complaint. *See People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (finding there was no

reasonable expectation of privacy because the "Yahoo! privacy policy indicated that chat dialogues may be shared for the purpose of investigating or preventing illegal activities").

## VII. CONCLUSION

For these reasons, the Court should dismiss Plaintiff's complaint in its entirety. Because Plaintiff cannot remedy the stated defects, the Court should dismiss with prejudice.

Dated: November 10, 2025

**HUNTON ANDREWS KURTH LLP**

By: */s/ Jason J. Kim*
Jason J. Kim
Hakop Stepanyan
Attorneys for Defendant
VENETIAN LAS VEGAS GAMING, LLC

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**