**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*[Additional Counsel on Signature Page]*

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAX VASQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VENETIAN LAS VEGAS GAMING, LLC,<br><br>Defendant. | Case No. 5:25-cv-07934-PCP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: January 15, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 8,<br>San Jose Courthouse<br>280 South 1st Street<br>San Jose, CA 95113 |

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 2

I. PLAINTIFF DID NOT CONSENT TO THE THIRD PARTIES' WIRETAPPING ............ 2

A. CIPA § 631(a) Requires Prior Consent And Venetian Never Obtained It ................. 2

B. Plaintiff Never Agreed To Allow His Activities To Be Tracked .............................. 3

C. Reasonable Users Would Not Understand Defendant's Terms or Policies As Giving Consent To The Third Parties To Intercept Hotel Booking Details ............. 13

II. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 631 ......................... 14

A. Plaintiff Alleges that Heap, Google, and Meta "Read or Attempted to Read" the "Contents" of His Electronic Communications ...................................................... 15

B. By Compiling and Organizing Vasquez's Responses From Multiple Screens In Real-Time, The Third-Parties Were Reading Or Learning What Was Being Said While It Was "In Transit" ........................................................ 18

C. Plaintiff Alleges that Venetian "Aided, Agreed With, Employed, Or Conspired With" the Third Parties in Violation of the Fourth Prong of CIPA § 631(a) ........... 21

III. THE COMMUNICATIONS AT ISSUE ARE CONFIDENTIAL AND PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 632 ......................................... 23

CONCLUSION ........................................................ 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ..... 23

*Barker Bros. v. City of Los Angeles*,
10 Cal. 2d 603 (1938) ..... 21

*Berman v. Freedom Fin. Network LLC*,
30 F.4th 849 (9th Cir. 2022) ..... passim

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ..... 14

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..... 24

*Chabolla v. ClassPass LLC*,
129 F.4th 1147 (9th Cir. 2025) ..... passim

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 22

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ..... 16

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090, n.5 (N.D. Cal. Oct. 17, 2025) ..... 16, 18, 19, 21

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ..... 21, 22

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) ..... 3, 9, 10

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ..... 22

*Frasco v. Flo Health, Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025) ..... 21

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ..... 7, 9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..... 17

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) ........ 22

*Herzog v. Superior Ct.*,
101 Cal. App. 5th 1280 (2024) ........ 1, 12, 13

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 14, 24

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 16, 17

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 15, 17

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ........ 18

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ........ 2, 3

*Kauders v. Uber Techs., Inc.*,
159 N.E.3d 1033 (Mass. 2021) ........ 4, 7

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 3

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ........ 17

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 7, 11, 14

*Lee v. Intelius Inc.*,
737 F.3d 1254 (9th Cir.2013) ........ 12

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 14

*M.H. v. Done Glob. Inc.*,
2025 WL 629613 (N.D. Cal. Feb. 26, 2025) ........ 22

*Marshall v. Georgetown Mem'l Hosp.*,
112 F.4th 211 (4th Cir. 2024) ........ 5

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........ 3

*Mikulsky v. Bloomingdale's LLC*,
2025 WL 1718225 (9th Cir. June 20, 2025) .......... 1, 16

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 16

*Mikulsky v. Bloomingdale's, LLC*,
2024 WL 3091395 (S.D. Cal. May 14, 2024) .......... 16

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 2, 23, 24

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 5

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 9, 10, 11

*Quamina v. JustAnswer LLC*,
721 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 6

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 20, 21

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 23

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 5, 8, 12, 13

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) .......... 1, 12

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 2, 14, 23, 24

*Snyder v. G6 Hosp. LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025) .......... 7

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) .......... 4

*St. Aubin v. Carbon Health Techs.*, Inc.,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 22

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .......... 2, 22

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .......... 14

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 21

**STATUTES**

Cal. Civ. Code § 53.5 ........ passim

Cal. Penal Code § 630 ........ 25

Cal. Penal Code § 631 ........ 18, 21, 22

## INTRODUCTION

Behind the Venetian's façade of bold proclamations about how a 1967 law applies to the internet age lies a motion to dismiss that repeatedly misstates the law, ignores the Complaint's allegations, and advances readings of the California Invasion of Privacy Act that are at odds with both the law's text as well as its purpose. These are not well-taken and its motion should be denied.

Take Venetian's first argument: that Vasquez consented to its data tracking. After collection already began, Venetian says it presented users with a cookie banner and declares that "[s]o long as Venetian provided Plaintiff reasonable notice of its Privacy Notice, he is bound." MTD at 9. The Ninth Circuit begs to differ: "Reasonable conspicuousness alone is not sufficient to bind a user—a user must agree to the terms, not merely see them." *Chabolla v. ClassPass, LLC*, 129 F.4th 1147, 1158 (9th Cir. 2025). And Venetian's motion fails to include any evidence that shows Plaintiff ever *unambiguously* manifested his assent to its data sharing practices. Venetian's cookie banner—assuming users even saw it—never gives users the choice to accept or reject its cookies. Nor can Venetian infer users' agreement to its Privacy Notice because they checked an 'I agree' box to a *different* set of Terms & Conditions. "[W]here a website specifically states that clicking means one thing, that click does not bind users to something else." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016). "The parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.'" *Herzog v. Superior Ct.*, 101 Cal. App. 5th 1280, 1293 (2024). Here, they do not.

Venetian's next argument, that it never disclosed the "contents of communications," *see* MTD at 14, entirely ignores the Complaint's allegations that third-parties intercepted Plaintiff's responses to various questions like, which suite he would like to stay in, when he would like to visit, and whether he would be booking direct. Numerous courts hold these exact kind of interactions to constitute communicative content. Venetian only relies on two cases to contrary. One was reversed (*Mikulsky v. Bloomingdale's LLC*, 2025 WL 1718225, *1 (9th Cir. June 20, 2025)) and the other—involving Plaintiff's counsel's law firm—does not stand for the proposition Venetian says it does.

And Venetian's argument that he did not plead his communications were read in transit ignores over twenty paragraphs. *See* Compl. ¶¶ 35, 50, 53, 59, 63-80. It also relies on an interpretation

of CIPA that is so narrow that it would not even prohibit the very tapping of phones the law was originally intended to prohibit. It has been rejected by many courts, as it should be here.

Venetian's claim that Plaintiff failed to allege it aided and abeted in the third-parties' interception is a non-starter because it relies on words that are not in the statute. *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025). And even if such allegations were required, Plaintiff's allegations that Venetian installed tracking technologies knowing they would be used to profile customers and deliver them target advertisements suffice. Compl. ¶¶ 34, 44-62.

Finally, Venetian's argument that the information at issue is presumptively not confidential simply because it was submitted online is wrong. *See, e.g.*, *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024). Another court in the hotel booking context already "agree[s] with Plaintiff that she has certainly alleged that she had a reasonable basis to believe that her communications [with the hotel] were 'confidential' (irrespective of whether or not they fall within the definition of 'guest records' under California Civil Code § 53.5)." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024). Venetian's motion should thus be denied.

## ARGUMENT

### I. PLAINTIFF DID NOT CONSENT TO THE THIRD PARTIES' WIRETAPPING

Venetian contends that "Plaintiff consented to the alleged practices at issue" and that this purported consent "dooms" his claims. MTD at 1-2. This argument fails because (1) Venetian never obtained Plaintiff's prior consent, (2) Plaintiff never agreed for his activities to be tracked, and (3) Venetian's disclosures are inadequate to establish consent.

#### A. CIPA § 631(a) Requires Prior Consent And Venetian Never Obtained It

Here, Venetian never obtained Plaintiff's "express prior consent" before wiretapping him. In *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1-2 (9th Cir. May 31, 2022), the Ninth Circuit held that, absent further word from the California Supreme Court, it "would interpret Section 631(a) to require the *prior* consent of all parties to a communication." (Emphasis added).

Here, Plaintiff alleges that "[n]owhere on the Website does Defendant request or receive Website users' affirmative consent *prior to* enabling the Third Parties' tracking technologies." Compl. ¶ 88 (emphasis in original). Plaintiff also states that "[n]either Defendant nor the Third

Parties procured Plaintiff Vasquez's *prior consent* to this interception." *Id.* ¶ 4 (emphasis added). "This is sufficient to meet his burden to plead that he did not provide prior consent to the recording." *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *6 (S.D. Cal. Jan. 12, 2024).

Defendant argues that it provided notice "on multiple occasions," MTD at 1, but this does not change the fact that on the first page Plaintiff and other Class Members visit, "the Third Parties' tracking technologies are active as soon as the Website loads, before Website users could even conceivably be put on notice or provide affirmative consent." Compl. ¶ 88. Thus, "[t]he complaint and the materials properly considered at the motion-to-dismiss stage do not establish that the plaintiffs consented to the alleged misappropriation of their data … [as] the complaint alleges that the [trackers] that [defendant] installs sync with the use's device the moment that they access the website—thus, by the time the user even sees the cookie banner, the initial visit has already been tracked …." *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *3 (N.D. Cal. Jan. 17, 2024). And Venetian cannot obtain "retroactive consent." *Id.* (citing *Javier*, 2022 WL 1744107, at *2).

### B. Plaintiff Never *Agreed* To Allow His Activities To Be Tracked

In any event, Plaintiff never consented. "[T]he existence of consent depends[, in part,] on whether Plaintiff[] agreed to [the defendant]'s privacy policy." *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 880 (N.D. Cal. 2025). Venetian argues that "Plaintiff assented to Venetian's Privacy Notice" on two separate occasions, "once when he landed on Venetian's homepage, and once before he confirmed his room reservation." MTD at 9. Each of these arguments fails.

#### a. Plaintiff Never *Unambiguously Assented* To Venetian's Privacy Notice Through The Cookie Banner

Venetian falsely claims that "[s]o long as Venetian provided Plaintiff reasonable notice of its Privacy Notice, he is bound." MTD at 9. This misstates the law. "Reasonable conspicuousness alone is not sufficient to bind a user—a user must agree to the terms, not merely see them." *Chabolla*, 129 F.4th at 1158. As such, courts have required *two—not one*—elements to establish a meeting of the minds online: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) *the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms*." *Id*. at

1154-55 (emphasis added) (cleaned up). Since the early days of the internet, courts have repeatedly stressed that the "unambiguous manifestation of assent to … terms by consumers [is] essential if electronic bargaining is to have integrity and credibility." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (Sotomayor, J.); *accord Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (quoting same language).

In the old days, consumers would manifest assent to terms by signing on the dotted line. But online, "[w]ithout an action comparable to the solemnity of physically signing a written contract … [courts] are concerned that such users may not be aware of the implications of their actions." *Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033, 1051 (Mass. 2021). As such, for terms to be enforceable, the Ninth Circuits has insisted on manifestation of assent that is "unambiguous." *Berman*, 30 F.4th at 857-58. Venetian cannot show that here.

**i. Venetian's Cookie Banner Fails To Establish *Unambiguous Assent***

Venetian claims Plaintiff is bound by its Privacy Notice because he saw the following cookie banner at the bottom of the screen. Karunamoorthy Decl., Ex. A., ECF No. 14-3.




Yet even assuming Plaintiff noticed this fine-print text, *but see* next section, *infra*, the cookie banner does not offer Plaintiff any way to *unambiguously* manifest his assent to the Privacy Notice. Instead, it simply contains an "X" button and says that mere use of the site constitutes agreement. This is not enough. As the Ninth Circuit notes, "merely clicking on a button on a webpage, viewed in the abstract, does not signify a user's agreement to anything." *Berman*, 30 F.4th at 857. Instead, "[a] user's click of a button can be construed as an *unambiguous* manifestation of assent *only if* the user is *explicitly advised that the act of clicking will constitute assent* …." *Id*. (emphasis added). And here, it does not. So even assuming Plaintiff clicked the "X" button—and Venetian submits no evidence that he did—that would fail to establish Plaintiff's

assent to the Privacy Notice. Indeed, if anything, a user's click of the "X" button could more reasonably be understood to mean the consumer wishes to close the banner.

Venetian might try to argue that Plaintiff manifested assent because fine print in the cookie banner said: "*By using our site*, you agree to these practices." Karunamoorthy Decl., Ex. A., ECF No. 14-3 (emphasis added). But there several problems with this advisal.

For starters, courts are reluctant to "assume[] assent is given by mere use of the website ...." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 470 (2021). Indeed, over a decade ago, in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1174 (9th Cir. 2014), the Ninth Circuit refused to enforce a website's terms, even though they said: "By visiting any area in the Barnes & Noble.com Site, ... a User is deemed to have accepted the Terms of Use." *Nguyen* explained that in such a "pure—form browsewrap agreement, 'the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service.'" 763 F.3d at 1176 (citations omitted). Earlier this year, the Ninth Circuit in *Chabolla* reierated that "Courts consistently decline to enforce browsewraps." 129 F.4th at 1154 (citing *Nguyen*).

So, "in keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers," *Nguyen* refused to enforce the book store's terms, in part, because it did "no[t] prompt[] [users] to take any *affirmative* action to demonstrate assent." 763 F.3d at 1178-79 (emphasis added). Indeed, in discussing the "unambiguous manifestation of assent" prong, the Ninth Circuit in *Berman* envisioned a *more affirmative* "action, such as clicking a button or checking a box …." 30 F.4th at 856. It did not approve of manufacturing consent by mere use.

A second problem with Venetian's notice ("By using our site, you agree…") is that it presumes acceptance *before it is given*. As *Nguyen* and other courts have observed, "visiting the website—[is] something that the user *has already done* …." 763 F.3d at 1176 (citation omitted). As another court noted, this creates an creates an ambiguity: "an unequivocal statement that … [plaintiff] *already* was subject to [certain terms] … might give the opposite impression [of what defendant may have intended], conveying not that she was being asked to agree to [the terms] but instead that the matter was out of her hands and already resolved." *Marshall v. Georgetown Mem'l*

*Hosp.*, 112 F.4th 211, 221 (4th Cir. 2024). And if a user believes the matter was out of her hands and already resolved, then her *continued* use of the site *could* reflect assent, but it *could also* reflect indifference or resignation. This is insufficient. The standard is not a possible, or even probable, manifestation of assent. It is an "unambiguous" one. *Berman*, 30 F.4th at 856.

The Ninth Circuit reached the same conclusion in a case involving a *pre*-checked "I agree" box. *Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1033 (N.D. Cal. 2024), *aff'd sub nom. Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025). There, the Court held users did not *unambiguously* assent to terms by their continued use of a website where an "I agree" "box was already checked [when the page loaded], meaning the plaintiffs were not required to check the box themselves before proceeding." *Quamina*, 721 F. Supp. 3d at 1033; *see also id.* (repoduced below).




The "plaintiffs … did not 'take some action ... from which assent might be inferred[,]'… because [the I agree box] was already checked for them." 721 F. Supp. 3d at 1039. The Ninth Circuit affirmed and noted "the pre-checked box" was dispositive. *Godun*, 135 F.4th at 713 n.6.

Because assent needs to be "unambiguous," the Ninth Circuit has emphasized that even minor vagaries in a website's language will defeat assent. For example, in *Chabolla*, the Ninth Circuit held "We find too much ambiguity in [the following notice's] language to find that a user binds herself to the Terms of Use by continuing past it." 129 F.4th at 1158. *See id.* at 1175 (below).




> Screen 2 explains that "[b]y signing up you agree to our Terms of Use and Privacy Policy." There is no "sign up" button, and the only button on screen 2 reads "Continue." At no point on any screen is a user advised that a particular action has "signed her up" or will "sign her up[]" …. Rather than provide explicit instruction, screen 2 asks the user "What's your name?" and includes fields for a first name and last name. It is up to the user to assume that entering a first and last name and

> clicking the "Continue" button amounts to "signing up."… [T]he resulting ambiguity is dispositive.

*Chabolla*, 129 F.4th at 1158.

The Ninth Circuit's recent precedents in *Chabolla* and *Godun* illustrate that while the first part of the test—*reasonably conspicuous* notice—gives websites some wiggle room, the second part of the test—*unambiguous* assent—does not. For the unambiguous assent prong, "we demand magic words—or, at least, we come very close." *Godun*, 135 F.4th at 715 (Nelson, J., concurring).[1]

It is precisely for this reason that Venetian's reliance on *Snyder v. G6 Hosp. LLC*, 2025 WL 2426613, at *3 (C.D. Cal. Aug. 18, 2025), *appeal filed*, 25-5586 (9th Cir.), and *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *8 (N.D. Cal. Oct. 10, 2025) is entirely misplaced. In *Snyder*, the website did not presume consent based on passive browsing. Rather, "users were required to check [a box that] stated 'I agree to rate and room policies of this reservation.*'" And "[t]he asterisk at the end of this affirmation" explained this included the "Privacy Policy." 2025 WL 2426613, at *4. Likewise, in *L.B.*, both assent problems identified by Plaintiff here were cured. First, instead of containing an ambiguous "X" button, "users [were] notified that they can consent to the policy [in the cookie banner] by clicking a large box with 'ACCEPT' written in all caps." *Id.*, at *10. And second, instead of creating confusion over whether users already agreed, the cookie banner in the *L.B.* more carefully used forward-looking language: "'By *continuing* to use our site, you are agreeing to our <u>Cookies Policy</u>.'" *Id.* at *8 (emphasis added).




**i. The Cookie Banner Does Not Give Reasonably Conspicuous Notice**

Venetian's cookie banner was also not reasonably conspicuous. In making this determination, courts consider both "[t]he 'context of the transaction,' as well as the 'traditional

[1] For good reason. This approach assuages judicial concerns that"[w]ithout an action comparable to the solemnity of physically signing a written contract, … users may not be aware of the implications of their actions …." *Kauders*, 159 N.E.3d at 1051.

inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design.'" *Chabolla*, 129 F.4th at 1155.

**<u>The Context</u>**. Here, the context does not lend itself to a finding of notice because users are booking temporary lodgings at a hotel instead of a more permanent, ongoing relationship. Because "this case involv[es] one-off transactions, reasonably prudent users of defendants' sites are unlikely to be on the lookout for fine print." *Chabolla*, 129 F.4th at 1155 (quoting *Berman*, 30 F.4th at 869). This kind of context "mak[es] it less likely that they would 'scrutin[ize] the page for small text outside the payment box or at the bottom of the screen.'" *Id*. at 1156 (quoting *Sellers*, 73 Cal. App. 5th at 480). "That in turn means that the conspicuousness of th[e] [Venetian] site['s] textual notices must undergo the most rigorous scrutiny." *Berman*, 30 F.4th at 868 (Baker, J., concurring).

**<u>The Visuals.</u>** Venetian's website also fails to highlight the terms it is asking consumers to consent to. In determining whether a given notice is visually conspicuous, the Ninth Circuit's guiding priciple is that: "'Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print.'" *Chabolla*, 129 F 4th at 1156 (quoting *Berman*, 30 F.4th at 857). *See* Declaration of Stefan Bogdanovich, Ex. A at 0:05 and ¶ 2; *accord* Karunamoorthy Decl., Ex. A.




Here, Venetian does not "prominently display" its data sharing practices. Rather, it cloisters

them at the bottom of the page, in small grey font about a one-sixth the size of the "Viva Las Venice" text immediately above it. It is placed on the polar opposite side of the page "from [the] relevant action items" users needed to click to proceed with their transaction, *Chabolla*, 129 F.4th at 1157—in this case,  the "Select Dates" and "Check Rates" buttons. Worse still, the image on the previous page actually *understates* how hard it is to find Venetian's notice. This is because when users visit Venetian's home page, they do not see a still image, but a dynamic background of rolling video clips showing various colorful scenes of the Venetian hotel, the casino floor, the day club, the pool, and/or a hotel room. Bogdanovich Decl., Ex. A. Nor is the banner permanent. Instead, it disappears if the user clicks on anything on the page, *see id.*, and will not reappear unless the user deletes their browsing history, *id.* at ¶ 5.

While "there is no bright-line test for finding that a particular design element is adequate in every circumstance[,]" *Chabolla*, 129 F.4th at 1156–57, that does not mean anything goes. Rather, "reference to past cases can help calibrate judges' instincts and ensure some modicum of consistency." *Godun*, 135 F.4th at 715 (Nelson, J., concurring). Perhaps the most apt comparisons to the screen here are *Edwards*, *supra*, 773 F. Supp. 3d at 887, App'x (N.D. Cal. 2025) and *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1357-59 (S.D. Cal. 2024)—both of which held notices were not reasonably conspicuous. *See Edwards*, 773 F. Supp. 3d at 887, App'x (below).



The *Edwards* court found conspicuousness lacking because there, as here, the "notice is set against a dynamic background of rolling movie clips" that "'naturally direct[ ] the user's attention everywhere else, … away from the barely readable critical text.'" *Id*. at 883 (citing *Berman*, 30 F.4th at 857). Also, in *Edwards*, "the notice on the main part of the Home Page [wa]s in tiny white font, below two prominent boxes that invite users to enter an email address and click 'GET STARTED.'" *Id*. at 882. Similarly, here, the font Venetian deployed in the cookie banner is "in a tiny gray font considerably smaller than the font used in the surrounding website elements." *Berman*, 30 F.4th at 856. Significantly, the cookie banner font here is about one-sixth the size of "Viva Las Venice" font immediately above it. So as the "Viva Las Venice" message shouts, the "third parties use cookies…" message whispers. A true-to-scale comparison is shown below.






And in one critical respect, the *Edwards* notice is *significantly better* than the one Venetian used here: "the notice's distance from relevant action items." *Chabolla*, 129 F.4th at 1157. In *Edwards*, the "By clicking 'Get Started' you… agree…" language appeared directly underneath the "GET STARTED" button. *Edwards*, 773 F. Supp. 3d at 881. Here, in contrast, the cookie banner appeared on the *polar opposite* side of the page from the relevant "Select Dates" and "Check Rates" buttons. The notice is at the bottom left while the buttons are at the top right. They could not be placed any farther apart. This is significant because *Chabolla* noted that in cases where textual notices were sufficiently conspciuous, the "notices [were either placed] directly above or below the relevant action item." 129 F.4th at 1157 (summarizing case law). Here, in contrast, Venetian's notice is placed "outside of the user's natural flow" at the top of the page. *Id*.

For this same reason, the court in *Price* held that the following cookie banner was not conspicuous. 712 F. Supp. 3d at 1358 (reproduced on the next page).




In *Price*, the court rejected a defendant's consent defense based on a cookie banner appearing on the bottom of the page. Like the cookie banner used here, in *Price*, "the text of the banner is smaller than the rest of the bold, large typeface found on Carnival's homepage, the notice is placed far below the relevant buttons that a user may click, the blue of the banner matches the blue of other web panels, and the white text of the banner blends in with the website's white background." *Price*, 712 F. Supp. 3d at 1359. The Venetian cookie banner here faces many of the same defects. The text inside the Venetian cookie banner is also "smaller than the rest of the bold, large typeface found on [the Venetian]'s homepage," and its black and white color scheme likewise "*blends in* with the website's [] background." *Id.* (emphasis added). Most importantly, the notice is placed "*far below* the relevant buttons that a user may click…." *Id.* (emphasis added).

It is for this same reason that the Venetian's reliance on *L.B.,* 2025 WL 2899514, at *8, is again misplaced. MTD at 9-10. There, the cookie banner was "in the *middle* of the page," and the "AGREE" button was within the same banner. *Id.* at *10 (emphasis added).

**b. Venetian Fails to Establish Unambiguous Assent at Checkout**

Next, Venetian contends that Plaintiff consented to the Privacy Notice at checkout by acknowledging his agreement to Venetian's "Terms & Conditions." MTD at 11. Not so fast. "[W]here a website specifically states that clicking means one thing, that click does not bind users to something else." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016) (citing *Lee v. Intelius Inc.,* 737 F.3d 1254 (9th Cir.2013)). And here, the checkout page says users are agreeing to Venetian's "Terms & Conditions," *not* its "Privacy Notice," *nor* its data tracking practices.


I accept the Terms & Conditions.

By checking the box, I request and consent to receive SMS messages about promotional materials from or on behalf of Venetian Las Vegas Gaming, LLC at any telephone number I have provided. I understand that my consent is not a condition of purchasing any goods or services. SMS messages may be sent using an automatic telephone dialing system. Message and data rates may apply. Text "STOP" to stop receiving SMS marketing and promotional messages.

By completing your reservation, you will receive emails about your reservation and stay with us. For more information about our information practices and your rights, read our Privacy Notice.

As such, a user's check of the box is not an *unambiguous* manifestation of assent to the Privacy Notice. Under California law, "[t]he parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.' … If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent." *Herzog v. Superior Ct.*, 101 Cal. App. 5th 1280, 1293 (2024) (quoting *Sellers*, 73 Cal. App. 5th at 460). As such, *Herzog* held that a user did not unambiguously manifest assent to an arbitration provision in a defendant's terms where the user checked an I agree to the terms box. *Id*. at 1289.


Legal

You understand and agree that your use of this website or any DexCom, Inc. mobile application or software platform for your DexCom continuous glucose monitor is subject to the Terms of Use, Privacy Policy and any other acknowledgements listed below. By ticking the boxes below you understand that your personal information, including your sensitive health information, will be collected, used and shared consistently with the Privacy Policy and Terms of Use. You further understand that personal information and sensitive personal information will be stored and processed by DexCom, Inc., and/or its affiliate, SweetSpot Diabetes Care, Inc., in the United States, which may have different data protection laws than the country in which you reside.

I agree to Terms of Use

*Herzog* held that the checkbox could not establish unambiguous assent to any one set of

terms, because the document that hyperlinked to the green Terms of Use next to checkbox discussed an arbitration provision, whereas the text block immediately above the I agree box discussed the collection of users' personal information. *Id*. at 1304. "[T]he 'Legal' screen assigned two possible meanings to the act of clicking the checkbox—one narrow and explicit, the other broad and implicit. It therefore created ambiguity with respect to whether users who clicked on the checkbox next to 'I agree to Terms of Use' were agreeing to have their personal information collected, used and shared 'consistently with' the Terms of Use and stored and processed by Dexcom and/or its affiliate in the United States, or whether they were consenting to be bound by all of the terms in the hyperlinked webpage, including the requirement of binding arbitration in the event of a legal dispute arising from injuries allegedly caused by Dexcom's products." *Id*.

Venetian's hyperlinked "Terms & Conditions" here create the same problem, but in reverse. Users clicking the hyperlink are taken to a webpage entitled "Hotel Terms and Conditions." ECF No. 14-8 at 2. But despite the webpage's title, the actual "Hotel Terms and Conditions" *only begin on page 4* of ECF No. 14-8 and follow *other material*. *Those* Hotel Terms and Conditions *never* discuss any collection, tracking, or sharing of personal information, and *never* incorporate any Privacy Notice by reference. *See id.* at 4-7. Instead, they discuss "Booking and Check-In", "Mobile Check-In and Checkout," "Payment and Cancellation Policies," "Taxes, Surcharges, and Resort Fee," and "Park Fees." *Id*. The linked webpage discusses Venetian's "information practices" and "Privacy Notice" *under an entirely different section* of the document, entitled "Hotel and Suite Policies," on page 3. *Id*. at 3. So Venetian's terms "assigned two possible meanings to the act of clicking the checkbox." *Herzog*, 101 Cal. App. 5th at 1304. Venetian users were *either* broadly agreeing to everything on the linked webpage *or* more narrowly agreeing to the "Hotel Terms and Conditions" discussed on pages 4 through 7. So their click of the "I accept" button cannot show they "all agreed 'upon the same thing in the same sense.'" *Herzog*, 101 Cal. App. 5th at 1293.

### C. Reasonable Users Would Not Understand Defendant's Terms or Policies As Giving Consent To The Third Parties To Intercept Hotel Booking Details

Even assuming Plaintiff *had* actual knowledge or inquiry notice of any of these terms and policies and manifested his assent to them, Defendant's consent defense *still* fails because

Venetian's Privacy Notice states:

> **We do not collect or process sensitive personal information for purposes of inferring characteristics about consumers**.

ECF No. 14-7 at 20 (emphasis added).

As the Complaint illustrates, this is plainly untrue—because Venetian *does* collect or process users' sensitive personal information for these purposes. "Meta, as enabled by Defendant, contemporaneously intercepts users' names, email address, phone numbers, and/or other personal details[,]" Venetian can "define custom audiences for ad targeting[,]" and "audience[s] [are] based on the traits of" consumers. Compl. ¶¶ 59-61, 77 (cleaned up). And Venetian can target ads to "[p]eople who share interests with [Venetian's] current customers." *Id.* ¶ 61 (cleaned up).

"If that user could have plausibly understood the disclosures 'as not disclosing that [the defendant] would engage in particular conduct,' then the disclosures are insufficient to establish consent." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (cleaned up).

Finally, "[e]ven with [Defendant's] disclosures, Plaintiff[] could still have a reasonable expectation of privacy in certain types of data—i.e., [(Cal. Civil Code § 53.5-protected) guest record]-related information." *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *6 (N.D. Cal. Oct. 10, 2025). "Consent is not an all-or-nothing proposition." *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013).

## II. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 631

As this Court recognized, CIPA § 631(a) has four distinct clauses. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196 (N.D. Cal. 2024) (Pitts, J.) (denying the defendant's motion to dismiss under prongs two and three and noting that "631(a) … makes punishable … any of [the] four things").

Each one of these clauses imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Here, Plaintiff "advances a claim under the fourth" clause. *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024); *accord* Compl. ¶ 99. As Venetian notes, "Section 631(a) further contains a fourth basis for liability, for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability."

MTD at 12. And here, Plaintiff alleges that the third parties violated clauses two through three. Compl. ¶¶ 103-104.

### A. Plaintiff Alleges that Heap, Google, and Meta "Read or Attempted to Read" the "Contents" of His Electronic Communications

Turning to the second clause of CIPA, Venetian argues the intercepted information—*i.e.*, the back-and-forth interactions between Venetian and its customers in the process of booking a hotel room—do not qualify as the "contents" of communications. MTD at 13. Not so. Mr. Vasquez and other users' interactions with Venetian's website qualifies as contents of communications because they convey an "intended message to another." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Among other things, their interactions told Venetian "*which* hotel[ and] *which* suites they [wish to] stay[] in, on *which* dates they [wish to] c[o]me and on *which* dates they [wish to] le[ave.]" Compl., ¶ 2 (emphasis in original).

The complaint itself illustrates the typical conversation between Venetian and its website users. On the first screen, the Venetian invariably begins the conversation by *asking* users to "select [the] dates" they wish to book and invites them to "check rates." Compl., ¶ 30 (screen 1). Venetian then tells them exactly how much each room costs. Compl., ¶ 30 (screen 2). Users then respond to the question by clicking on which date and price they wish to book and clicking the "Select offer and Suite" button. *Id*. On the next page, Venetian asks them whether they would like one or two beds, in either the Venetian or the Palazzo. Compl., ¶ 31 (screen 3C). Users again respond by clicking the "+Select suite" button. *Id*. (screen 3D). To reach the next page, users tell Venetian to take them to the "NEXT STEP." *Id*. (Screen 3E). Once they do, users are then "ask[ed] … whether they wish to… keep the default, 'Standard View' or upgrade to a 'City View' or 'Sphere View.'" Compl., ¶ 32 (Screen 4). They respond by clicking one of the options. The complaint alleges Heap, Google and Meta, all capture the users' responses to these various questions. Compl. ¶¶ 63-80.

As these interaction illustrate, when a consumer uses Venetian's website, she communicates with it just as she would with a hotel concierge. Such messages do not lose their communicative character simply because they are expressed through a button click as opposed to a vocal cord. As other courts in this district have noted, "the names of buttons clicked on websites and their associated

URLs" can qualify as "'content[s]' [of communications] within the meaning of the statute." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). And so an interaction like clicking "the log-in buttons" to healthcar e websites "are 'contents'… becausethey concern the substance of a communication." *Id*. Or, as another court put it, "a button-click for 'bill pay' would seem to be the content of a communication because the user was trying to substantively communicate with the provider." *Doe I v. Google LLC*, 2025 WL 1616720, at *3 (N.D. Cal. June 6, 2025). Even *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *4, n.5 (N.D. Cal. Oct. 17, 2025)—a case Venetian extensively relies on—found that "clicking on the 'For Me' button under the prompt 'I am reaching out'" likely "satisf[ies] the 'contents of communication' requirement." And just as in those cases, where the user is communicating that they wish to log in to their patient portal, to reach out on behalf of themselves, or pay their bill, likewise here, users are communicating to Venetian "*which* hotel [and] *which* suites they [wish to] stay[] in, on *which* dates they [wish to] come and on *which* dates they [wish to] le[ave]," among other things. Compl., ¶ 2 (emphasis in original).

Citing a district court opinion that was *reversed*, Venetian seems to argue that "'button clicks [and] mouse movements'" are categorically "'record information,'" and thus could never constitute the contents of a communication. MTD at 14 (citing *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024)). Not so. In *Mikulsky*, the district court thought "[p]laintiff alleg[ations] that Fullstory 'intercepts … products viewed or placed in website visitors' 'carts' or 'wish lists,' and 'data entered into text fields but not 'submitted' by the visitor,'" did not allege the contents of communications. 2024 WL 3091395, at *3 (S.D. Cal. May 14, 2024). The Ninth Circuit *disagreed*: "The district court erred in dismissing Mikulsky's claim under the California Invasion of Privacy Act… The Complaint alleged real-time capture of the contents of Mikulsky's communications on Defendants' website … not merely the … the characteristics of the communications." *Mikulsky v. Bloomingdale's LLC*, 2025 WL 1718225, *1 (9th Cir. June 20, 2025).

Venetian next argues that any "address, telepone number, email address, or zip code" intercepted here would be "record information." MTD at 14 (citation omitted). Again, the case law does not make such bright-line rules. "Generally, customer information such as a person's name, address, and subscriber number or identity is record information, but *it may be contents when it is*

*part of the substance of the message conveyed* to the recipient." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) (emphasis added) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014)). And here, the issue is not that the Third Parties are intercepting Plaintiff's name, email, or identifier *in a vacuum*. Rather, the issue is that Third Parties are intercepting that he—*and not some anonymous internet user*—"browsed and booked a Venetian stay" at a specific date and time, with a specific number of guests. Compl. ¶ 4. Likewise, in the healthcare context, the court held that "contact information provided as part of a sign-up process constitutes 'content' because *this information is the subject of the communication*." *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 795 (emphasis added) (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)).

Lastly, Venetian misrepresents the court's holding in *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419 (E.D. Cal. June 9, 2025) when it claims that Judge Coggins "rejected the plaintiff's claim that [kind of] information [conveyed here] amounted to 'content' under CIPA." MTD at 14. This is plainly untrue. In *King*, the court acknowledged plaintiff's argument that "'button clicks' convey 'the destination to which [Website users] wish to travel, the desired dates for their trip, the number of rooms they require, the number of adults and children who will be traveling, and the particular hotel section or tower in which they wish to stay," which, along with "'full-string URLs of the Website pages she visited,' … convey 'individualized search terms and booking information.'" 2025 WL 1635419, at *4. However, it faulted plaintiff for not "identify[ing] with specificity what information she provided on Defendant's Website." *Id*. at *4. The *King* court granted leave to amend accordingly. *See id.* at *5 ("Because alleging additional facts could cure this pleading deficiency, the court will grant Plaintiff leave to amend this claim.").

So, at best, *King* stands for proposition that, in order to allege contents of communication, a plaintiff needs to plead which specific communications were intercepted. But this Court already rejected that exact same argument in *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) (Pitts, J.). "Plaintiffs do not need to plead the specific and presumably … sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred." *Id*.

### B. By Compiling and Organizing Vasquez's Responses From Multiple Screens In Real-Time, The Third-Parties Were Reading Or Learning What Was Being Said While It Was "In Transit"

Next, Venetian argues that Plaintiff "merely claims the Third Parties intercept" the communications in transit but allegedly "says nothing about whether the Third Parties actually read, attempt to read, or attempt to learn the 'contents'.'" MTD at 15. This is untrue.

**Plaintiff's Communications Were Read And Learned.** Plaintiff's "complaint contains a plethora of allegations that [each of the third parties] read and used the data it acquired from [Defendant's website] for its own marketing services." *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (Pitts, J.). For example, the Complaint alleges that "Heap provides for analysis through … dashboards," which allow "'access to … user demographics' and 'product engagement.'" Compl. ¶ 50. As for Google, the "Google tracking technologies on the Website compel that user's browser to transmit several Google cookies," including a "marketing cookie that "[p]rofiles the interests of website visitors to serve relevant and personalised ads through retargeting." *Id.* ¶ 53. And "the Meta Pixel can be used to help 'measure ad effectiveness'; 'define custom audiences for ad targeting'; and support 'Advantage+ catalog ads campaigns.'" *Id.* ¶ 59.

**Plaintiff Need Not Allege They Were Read And Learned In Transit.** Relatedly, Venetian argues that, even if the third parties had *read or learned* what was being said, they did not do so "*while the[] [communications] are in transit.*" MTD at 15. The Court should reject this inpretation because it would legalize the very same conduct law was enacted stop. "CIPA was enacted in 1967 to address the increasing use of wiretapping to eavesdrop on private phone conversations." *Eating Recovery*, 2025 WL 2971090, at *3. But when a human taps into someone's phone conversation, it is physically impossible for him to mentally process what is being said during the time a communication "is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). Even back in 1967, phone communications traveled at the speed of light. Our human bodies, by comparison, are woefully slow. We listen at the speed of sound and even the most quick-witted among us can only process text or sound in tenths of a second. By the time we realize what is said, a message travelling at the speed of light would have

already made several laps around the earth. Perhaps recognizing this, many courts have rejected Venetian's interpretation, and held that "merely intercepting the communication while it's being made is enough, as long as the interception happens simultaneously or near-simultaneously." *Eating Recovery*, 2025 WL 2971090, at *5 (collecting cases).

**<u>Plaintiff Nevertheless *Does* Allege His Communications Were Read And Learned In Transit.</u>** That being said, the tracking technologies at issue in this case are not subject to our same human limitations. So even were the Court to adopt this anomalous interpretation of CIPA, Plaintiff would *still* state a claim. The Complaint does not merely allege Heap, Google, and Meta simply intercepts users' responses in real-time. Rather, it alleges that those real-time transmissions actively *combine* what the user clicked over the course of several screens to make sense of the conversation that was occurring before them in real-time. So for example, at the "final step of the checkout process" on screen 5, Heap *combines* the "button clicks on Website Screens 2-5" and *summarizes* that, during this conversation, the user the booked a room for two nights from February 25-27, 2025 (Screen 2) at the Venetian and not the Palazzo (Screen 3), booked a room with two beds (Screen 3), upgraded to a Sphere View (Screen 4), and paid $933.50 for it (Screen 5). Compl., ¶ 68. A screenshot of this summary is reproduced below. Compl. ¶ 67.

| | |
|---|---|
| pp | Reservations \| The Venetian Resort Las Vegas |
| pp | ts |
| pp | 1757966592305 |
| pp | pr |
| pp | /book/upgrades |
| id0 | 1227157519817929 |
| k0 | Optimizely: BE-009 \| BE Extra Calendar Features |
| k0 | AA |
| k0 | checkoutstep |
| k0 | 3 |
| k0 | pagename |
| k0 | /book/checkout |
| k0 | arrivalDate |
| k0 | 25/02/2026 |
| k0 | departureDate |
| k0 | 27/02/2026 |

| | |
|---|---|
| k0 | roomTotal |
| k0 | 933.5 |
| k0 | hotel |
| k0 | venetian |
| t0 | Booking Page - Step 3 - Selected Suite and Offer |

| | |
|---|---|
| k0 | nights |
| k0 | 2 |
| k0 | adults |
| k0 | 2 |
| k0 | children |
| k0 | 1 |
| k0 | totalGuests |
| k0 | 3 |
| k0 | searchRoomAvailability |
| k0 | Yes |
| k0 | suiteName |
| k0 | New Luxury Loft Two Queen Sphere View |
| k0 | roomRate |
| k0 | 400 - 450 USD |
| k0 | offerCode |
| k0 | MVFDE2PV |
| k0 | suiteOptions |
| k0 | luxury |

The Google and Meta trackers operate in similar fashion. Google intercepts the conversation between and summarizes the "button clicks on Website Screens 2 and 3A-3E." Compl., ¶ 71. Meta also intercepts the conversation at each step of the process. Compl., ¶¶ 75-80. And while Meta, unlike the other two trackers, does not summarize the different button clicks on different screens, Meta *does* summarize when a user makes more than one button click on a single screen. So for example, on Screen 3, Meta summarizes that a user selected book direct on Screen 3B, selected the Venetian tower on Screen 3C, and clicked the "NEXT STEP" on Screen 3E. Compl., ¶ 78.

In other words, by detailing how the third-parties "'connect[] all these identifying points of data into a single [transmission] … in real time,' Plaintiffs have set forth a specific factual theory as to how [the third parties] incorporate[]—and thus read[]—the intercepted content 'in real time.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025).

Moreover, the complaint alleges that these transmissions occur "simultaneously," *i.e.*, "at the same time as they are being sent to the defendant." Compl., ¶ 35. "This entire process occurs within milliseconds." *Id*. These factual statements thus "distinguish[] Plaintiff[]'s allegations from the conclusory allegations which courts have found do not plausibly state a claim because they merely 'restate the pleading requirement of real time interception' without providing any 'specific facts as to how or when the interception takes place.'" *Riganian*, 791 F. Supp. 3d at 1091 (citation omitted). And "Courts have held allegations of simultaneous duplication and interception of communications

sufficient to plead 'interception' while 'in transit.'" *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (collecting cases).

Defendant's reliance on *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) and *Eating Recovery Center*, 2025 WL 2971090, at *6 only further illustrates the impropriety of their Rule 12 arguments. Both those cases were decided at summary judgment. *See id.* Another court in this district, facing a different set of tracking technologies on a different website which was configured in a different way *denied* summary judgment on the issue of "whether Meta's interception occurred while the communications were 'in transit.'" *Frasco v. Flo Health, Inc.*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025).

Indeed, the court in *Riganian* made this same observation:

> As *Torres* itself illustrates, … whether communications are "read" in transit or only after storage is *a fact-intensive question* that depends on how the challenged technology and processes actually work—a question *Torres* decided *only after a full evidentiary record at summary judgment.*

791 F. Supp. 3d at 1092.

### C. Plaintiff Alleges that Venetian "Aided, Agreed With, Employed, Or Conspired With" the Third Parties in Violation of the Fourth Prong of CIPA § 631(a)

Venetian argues that Plaintiff cannot show it "knowingly aided and abetted" the third parties. MTD at 2; *see also id.* at 15. Venetian's argument stumbles out of the gate because the word "abet" appears nowhere in CIPA § 631(a). Instead, the text of the fourth clause of § 631(a) imposes liability when a person "aids, agrees with, employs, *or* conspires with any person" to violate the statute. Cal. Pen. Code § 631(a) (emphasis added). This clause uses the word "or." "The word 'or' is ordinarily used as a disjunctive 'that marks an alternative generally corresponding to 'either' as 'either this or that.'" *Barker Bros. v. City of Los Angeles*, 10 Cal. 2d 603, 606 (1938). So, there is liability if Venetian *either* "aids" *or* "agrees with," *or* "employs" *or* "conspires with" the Third Parties.[2]

"The plain text of section 631(a) is unambiguous on this issue … [i]t does not require that a

[2] Along this same line of reasoning, Defendant raises a red herring by arguing that "[i]t is utterly implausible to suggest Venetian secretly *conspired* with the Third Parties." MTD at 16 (emphasis added). Venetian need only "aid[,]" "agree[] with[,]" or "employ[]" the third parties. Cal. Pen. Code § 631(a).

party aid *and* abet." *Tate v. Vitas Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2024) (emphasis in original). So "there is no basis to read in a common law standard of aiding and abetting when the statute itself is clear." *Id.* "Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023). So this court should "find[] the approach in *Cousin* more persuasive because it more closely follows the language of the statute." *St. Aubin v. Carbon Health Techs.*, Inc., 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839 (E.D. Cal. 2025).

Here, Plaintiff's allegations that Venetian installed and configured the tracking technologies to help target its advertisements, *see* Compl. ¶¶ 34, 44-62, "are sufficient to plead that [Venetian] *either* aided, agreed, employed, *or* conspired with [the third parties] in the alleged interception of their information and data …." *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 839-40 (citing cases).

Venetian's reliance on *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) is misplaced. The *Esparza* court only interpreted CIPA § 631 using the "common law definition of aiding and abetting" because in that case "[n]either side ... cited any cases addressing the scienter requirement for aiding and abetting claims under section 631(a), clause four." *Id.*, at *6. This is not an endorsement of Venetian's misreading of the statute.

Yet even under the common law aiding and abetting standard, Plaintiff's allegations are sufficient. Plaintiff alleges: "Heap provides Defendant with the ability to further optimize and monetize its Website," Compl. ¶ 51, "Google tracking technologies on the Website" are used for "marketing" and "advertising, including serving and rendering ads[,]" Compl. ¶¶ 51, 58 (cleaned up), and "advertisers, like Defendant," can use the Meta Pixel "'to find people most likely to respond to [their] ad[s].'" *Id.* ¶ 61 (cleaned up). In other words, Venetian is keenly aware of the marketing and advertising benefits it stood to gain by installing and configuring the tracking technologies to "contemporaentously interecept" Plaintiff's communications in real time. Compl. ¶¶ 63, 70, 75. Cases applying the aiding and abetting standard have found this sufficient.[3]

[3] *M.H. v. Done Glob. Inc.*, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025); *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *6 (C.D. Cal. July 31, 2024).

Venetian cites *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) for the proposition that "merely using third party tools and software is not enough." MTD at 16. "Defendant's reliance on *Rodriguez* is misplaced. There, the *plaintiff failed to allege that the eavesdropper [] actually engaged in behavior that constitutes wiretapping* because 'Plaintiff does not allege that Defendant knew that [the eavesdropper] was using the chat data beyond storing it for Defendant or that [the eavesdropper] was distributing the chat to Meta.'" *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *12 (N.D. Cal. Sept. 16, 2025) (emphasis added) (*quoting Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. Mar. 21, 2024)). Here, in contrast, Heap openly boasts to its customers that it "intercept[s] 'all the data on your customers. What they click. Where they go. What they do, even when you're not looking.'" Compl., ¶ 2.

Instead, the allegations here are more like *Balestrieri* where the plaintiff "alleg[ed] that Facebook uses the information transmitted by the Facebook pixel to deliver targeted ads to the user, thereby generating revenue for Facebook.'" *Balestrieri*, 2025 WL 2776356, at *12 (explaining that "[a]llegations that a defendant intended to collect and disclose the information are sufficient to plead intent.") (emphasis added).

## III. THE COMMUNICATIONS AT ISSUE ARE CONFIDENTIAL AND PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 632

Defendant next contends that "courts roundly have held that 'Internet communications do not reasonably give rise to that expectation' of confidentiality." MTD at 16. The Court squarely rejected this argument in its decision in *Smith*, 735 F. Supp. 3d at 1199: "California courts have *never* recognized a legal 'presumption' that internet communications are not confidential under Section 632." (Emphasis added) (citation omitted); *accord Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, *11 (C.D. Cal. Oct. 4, 2024) ("Section 632 makes no exception on its face for communications over the Internet, or in the 'Internet Age.'").

Next, Defendant contends "[t]here is nothing about the … information [] here" that is confidential. MTD at 17. Not true. The Complaint alleges:

> When communicating with Defendant, Plaintiff … had an objectively reasonable expectation of privacy, based on Cal. Civil Code § 53.5. Thus,

> Plaintiff … did not reasonably expect that anyone other than Defendant would be on the other end of the communication, and that other, third-party entities like Heap, Google, and Meta, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff.

Compl. ¶ 119.

> Neither Defendant nor the Third Parties procured Plaintiff Vasquez's prior consent to this interception.

*Id.* ¶ 4.

Thus, Plaintiff had "reasonable basis to believe that her communications [on an online hotel booking website] were 'confidential' []irrespective of whether or not they fall within the definition of 'guest records' under California Civil Code § 53.5." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024).[4]

Venetian cites *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014), and *In re Google Inc.,* 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013), which cases concerned chats and email communications. But "the factual circumstances alleged here are clearly distinguishable from chats or emails." *Smith*, 735 F. Supp. 3d at 1200 (emphasis added) (Pitts, J.). "Plaintiff[ ] allege[s] that [he] expected [his] [hotel guest record] information would remain confidential—an expectation [he] argue[s] was objectively reasonable because sharing [guest record] information without consent is [illegal]." *Id.*

Without quoting the text of the statute itself, Venetian claims "Section 53.5(i) … explicitly permits the sharing of" Plaintiff's wiretapped information "by business entities with third parties for business-related purposes." MTD at 17. That is untrue. Subdivision (i) says only that Venetian may share "business records to a *third-party service provider*." However, "third-party service provider" is a defined term that covers only entities which "provide services outlined in the contract *that has no independent right to use or share the data beyond the terms of the contract*." Cal. Civ. Code § 53.5(f). Here, however, Plaintiff alleges "none of the Third Parties is a legitimate 'third-party service provider,' because… *the Third Parties have the capability to use the*

[4] Venetian's contention that Plaintiff "could not have had a reasonable expectation of privacy" due to its Privacy Notice, MTD at 17, fails for the reasons set forth above in Argument § I.

*information they wiretap for purposes other than simply providing a recording to Defendant …* Therefore, Defendant's conduct here at issue was not permitted by Cal. Civil Code § 53.5(i)." Compl. ¶ 25; *see also id.* ¶¶ 80-84. Defendant has failed to proffer any contract(s) or limitation(s) on the Third Parties' use of Plaintiff and Class Members' wiretapped data. *See generally* MTD.

**CONCLUSION**

Over 50 years ago, the California legislature "declare[d] that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. The passage of time has not lessened these concerns; it has amplified them. Venetian pervasively deployed these new internet tracking technologies without regard for the law or its users' permission. Now it asks for lenity. These arguments fall flat.

For the foregoing reasons, Venetian's motion to dismiss should be denied. Should the Court dismiss any claim, Plaintiff requests leave to amend.

Dated: December 8, 2025

By: /s/ *Stefan Bogdanovich*

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Kyle D. Gordon (*admitted pro hac vice*)

1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: kgordon@bursor.com

*Attorneys for Plaintiff*