Jason J. Kim (State Bar No. 221476)
kimj@Hunton.com
Hakop Stepanyan (State Bar No. 296782)
hstepanyan@Hunton.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

Attorneys for Defendant VENETIAN
LAS VEGAS GAMING, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MAX VASQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VENETIAN LAS VEGAS GAMING, LLC,<br><br>Defendant. | CASE NO.: 5:25-CV-07934-PCP<br><br>Honorable P. Casey Pitts<br><br>**DEFENDANT VENETIAN LAS VEGAS GAMING, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date: January 15, 2026<br>Time: 10:00 a.m.<br>Crtm: 8 – 4th Floor |

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. PLAINTIFF'S CONSENT BARS BOTH OF HIS CLAIMS ..... 2

A. Plaintiff Assented To The Privacy Notice Before Any Alleged Data Collection ..... 2

B. Plaintiff First Assented To The Privacy Notice Via The Cookie Banner ..... 3

1. The Cookie Banner Establishes Unambiguous Assent ..... 3

2. The Cookie Banner Provides Reasonably Conspicuous Notice ..... 5

C. Plaintiff Again Assented To The Privacy Notice Via The Checkout Screen ..... 7

D. Venetian Privacy Notice Discloses The Challenged Practices ..... 8

III. PLAINTIFF'S SECTION 631 CLAIM FAILS FOR REASONS BEYOND CONSENT ..... 9

A. Plaintiff Cannot Show An Underlying Violation By The Third Parties ..... 9

B. Plaintiff Cannot Show Venetian Aided Any Alleged Violation ..... 12

IV. PLAINTIFF'S SECTION 632 CLAIM FAILS FOR REASONS BEYOND CONSENT ..... 13

V. CONCLUSION ..... 14

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ....12, 13

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....4, 5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....7

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ....5

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....13

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ....3, 4

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ....10

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ....2, 11

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) ....5, 6

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....12

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) ....12, 13

*Herzog v. Super. Ct.*,
101 Cal. App. 5th 1280 (2024) ....8

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ....6

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ....3

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ....3

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ........ *passim*

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)........5, 6, 7, 9

*M. H. v. Done Glob. Inc.*,
2025 WL 629613 (N.D. Cal. Feb. 26, 2025) ........12, 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Ca. Dec. 22, 2022)........10, 14

*Mikulsky v. Bloomingdale's, LLC*,
2025 WL 1718225 (9th Cir. June 20, 2025) ........10

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)........10

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)........14

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........4, 5

*Quamina v. JustAnswer LLC*,
721 F. Supp. 3d 1026 (N.D. Cal. 2024), *aff'd sub nom. Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........4

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........13, 14

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)........12

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ........4, 5

*Shaw v. Regents of Univ. of Ca.*,
58 Cal. App. 4th 44 (1997) ........7

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........14

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........12

*Snyder v. G6 Hosp. LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025)........1, 7, 8, 9

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................................................................13, 14

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025)............................................................................13

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ...............................................................11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......................................................................................10

**Statutes**

Cal. Civ. Code § 1798.140..................................................................................................9

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# I. INTRODUCTION

Expecting a different result on this go-round, Plaintiff's opposition recycles and retreats to the same arguments courts have rejected in two other "guest records" cases brought by his lawyers. *Snyder v. G6 Hosp. LLC*, 2025 WL 2426613, at *5 (C.D. Cal. Aug. 18, 2025) (dismissing near-identical lawsuit because plaintiff consented to alleged data collection and sharing); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing near-identical lawsuit because "guest records" do not amount to actionable "content" under CIPA). Quite simply, Plaintiff has broken no new ground, offering no legitimate reasons as to why the Court should reach a different result here.

Apparently lured by the promise of $5000 statutory damages under CIPA, Plaintiff sought to bury his multiple consents to the ordinary, everyday practices about which he now complains, claiming he is the victim of "secret" practices that Venetian allegedly concealed from him. That myth now has been shattered, and Plaintiff's opposition does not and cannot show otherwise.

Despite Plaintiff's studied efforts to conceal robust disclosures provided to him through the artful cropping of screenshots in his complaint, the Court now has the benefit of complete images before it. And now that those images have been laid bare, Plaintiff cannot hide from the fact that: (1) he was presented with a conspicuous banner that openly disclosed the allegedly "secret" use of the technologies at issue here when he first landed on Venetian's homepage (including a direct hyperlink to Venetian's Privacy Notice that provides even more disclosures); or (2) he had to affirmatively click a box saying he "accepts" Venetian's Terms & Conditions (which, again, expressly incorporate and hyperlink to Venetian's Privacy Notice) before he could even complete his hotel reservation. Whether Plaintiff chose to read those disclosures—or simply couldn't be bothered due to his apparent indifference about data usage—is wholly irrelevant. Plaintiff had ample notice of the alleged practices, and Venetian provided him an opportunity to reject. Plaintiff, however, deliberately and consciously answered clear calls to action laid out in plain English, and, in both instances, he answered those calls in the affirmative. Plaintiff must live with his choices.

Even if Plaintiff could somehow convince the Court to overlook his prior consents (and he cannot), the opposition fails entirely to counter the other independent bases for dismissal:

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

The Section 631(a) Claim. Plaintiff fails to direct the Court to any allegations adding up to a violation of Section 631(a) under an aiding-and-abetting theory:

- Plaintiff cannot distinguish this case from *King*, 2025 WL 1635419, which held that the same "guest records" at issue here do not amount to actionable "content."
- Plaintiff cannot show the Third Parties "read" data "in transit" simply because software allegedly "combines" and "summarizes" that data into a single transmission. "A filtering process that simply sorts out certain data—which may be better analogized to sorting mail than to reading it—can't fairly be characterized as an effort at understanding the meaning of the communication." *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025). Yet that is all Plaintiff alleges here.
- Plaintiff cannot show Venetian knew the Third Parties violated Section 631(a) or that Venetian substantially assisted such nonexistent violations. Venetian did not help anyone "secretly" intercept data. Rather, it told Plaintiff multiple times that it shared data with analytics and advertising partners.

The Section 632 Claim. Plaintiff cannot overcome the long-settled presumption that his online interactions with Venetian's website are not "confidential" within the meaning of Section 632. *King*, 2025 WL 1635419, at *5.

Rather than overcome the prior holdings that doomed the same "guest records" claims Plaintiff asserts again here, the opposition validates them. Given these same claims have been tested multiple times in other lawsuits, it is plain that leave to amend would be futile. The Court should dismiss this lawsuit with prejudice.

## II. PLAINTIFF'S CONSENT BARS BOTH OF HIS CLAIMS

### A. Plaintiff Assented To The Privacy Notice Before Any Alleged Data Collection

Try as he may, Plaintiff cannot argue around the indisputable fact that he consented to the alleged practices about which he now complains:

*First*, Plaintiff asks the Court to ignore the judicially noticeable screenshots presented to the Court and accept as true his now-disproven claim that "[n]either Defendant nor the Third Parties procured Plaintiff Vasquez's prior consent to this interception." Compl. ¶ 4. To support that lofty

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

proposition, Plaintiff cites *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024). Plaintiff's reliance on *Kauffman* is misplaced. In that case, the plaintiff had no way of providing consent until his data had already been shared with a third party. *Id.* at *6. Here, Plaintiff assented to the challenged practices and to Venetian's Privacy Notice as soon as he landed on Venetian's homepage through a conspicuous cookie banner (and he did so again before confirming his hotel reservation). Plaintiff knew full well about any usage and sharing of alleged "guest records" long before he transmitted it.

*Second*, Plaintiff claims prior consent is impossible because the "Third Parties' tracking technologies are active as soon as the Website loads." Compl. ¶ 88. Even if that were true (and Venetian disputes the same), Plaintiff complains that his alleged "guest records" were transmitted to Third Parties *after* Venetian told him that would occur—from the alleged room selections he made after seeing the cookie banner on Venetian's homepage through to the basic customer information he submitted after affirming his assent yet again on the reservation page. *Id.* ¶¶ 23-24. Quite simply, Plaintiff had full knowledge of any data usage and sharing long before he submitted the data in question, and no amount of temporal misdirection can establish otherwise.

Plaintiff's reliance on *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022) is misplaced. In that case, the plaintiff provided his demographic information and medical history to request an insurance quote, while a third party allegedly recorded every second of that interaction—all of that happened before the plaintiff received any notice of the defendant's privacy policy. *Id.* at *1. That simply didn't happen here, and judicially-noticeable facts, along with Plaintiff's own allegations, establish the same.

### B. <u>Plaintiff First Assented To The Privacy Notice Via The Cookie Banner</u>

#### 1. The Cookie Banner Establishes Unambiguous Assent

Plaintiff claims Venetian's cookie banner "does not offer Plaintiff any way to *unambiguously* manifest his assent to the Privacy Notice." Opp. at 4:19-21. But it does.

Venetian's cookie banner need only "notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

(9th Cir. 2025) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022)). And here, Venetian's cookie banner does just that.

In plain English, the cookie banner presents users with a clear cause-and-effect statement: "By using our website, you agree …" that Venetian "and certain third parties use cookies and similar technologies that may collect and share information about your use of our site," the details of which are available in the hyperlinked Privacy Notice. Stated differently, the cookie banner presented Plaintiff with a clear call to action ("using our website") that would result in a clear causal effect—agreement to collection and sharing of information as detailed in the Privacy Notice. If Plaintiff did not want that to happen, he had notice as to how to avoid it. Stop using the Website and don't transmit the data in question. Plaintiff, however, chose otherwise.

Unlike here, Plaintiff's cited cases did not involve a cookie banner that articulated a specific call to action that would result in a clear causal effect—*i.e.*, that an action by the plaintiff would bind him or her to an agreement or manifest their consent. Indeed, in each of Plaintiff's cited cases, the notices at issue did not link any call to action to any causal effect—*i.e.*, assent. *Chabolla*, 129 F.4th at 1158 ("Screen 2 explains that '[b]y signing up you agree to our Terms of Use and Privacy Policy.' There is no 'sign up' button, and the only button on screen 2 reads 'Continue.'"; "Screen 3 … reads, 'I agree to the Terms of Use and Privacy Policy,' and the action button that follows is labeled 'Redeem now.'"); *Berman*, 30 F.4th at 858 ("Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the user what action would constitute assent to those terms and conditions."); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 (9th Cir. 2014) ("[T]he checkout screens here contained 'Terms of Use' hyperlinks" but "provides no notice to users nor prompts them to take any affirmative action to demonstrate assent"); *Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1039 (N.D. Cal. 2024) ("Here, the text notice does not warn the user that by clicking 'Connect now,' she agrees to binding terms."), *aff'd sub nom. Godun v. JustAnswer LLC*, 135 F.4th 699, 712 (9th Cir. 2025) ("The advisal lacked an explanatory phrase indicating that 'By clicking connect now' or 'By connecting,' or 'By chatting,' etc., she agreed to the terms.").[1]

[1] *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) does not help Plaintiff either. In that case, the sole issue is whether the notice was reasonably conspicuous. It did not address whether the

Unlike Plaintiff's cited cases, Venetian's cookie banner "clearly states that users agree to the terms of the [Privacy Notice] by continuing to use the website." *L.B.*, 2025 WL 2899514, at *10. That is sufficient, and Plaintiff's own cited case confirms the same. *Nguyen*, 763 F.3d at 1177 ("[W]here the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements."); *see also Berman*, 30 F.4th at 857-58 ("The presence of 'an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound' is critical to the enforceability of any browsewrap-type agreement"); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *2, *4–5 (N.D. Cal. Apr. 1, 2005) (enforcing forum selection clause in website's terms of use where every page on the website had a textual notice that read: "By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site, which prohibit commercial use of any information on this site").[2]

Venetian's cookie banner clearly articulated the precise action that would constitute assent to the practices at issue, and Plaintiff took that action.

### 2. The Cookie Banner Provides Reasonably Conspicuous Notice

Plaintiff argues that Venetian's cookie banner is not reasonably conspicuous because Venetian does not "prominently display" it. Opp. at 8-11. But the cases upon which Plaintiff relies serve only to illustrate the opposite.

For example, in *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868 (N.D. Cal. 2025), the notice (a screenshot of which is provided below) is not, as here, set forth in a banner. Rather, it is presented "in tiny white font, below two prominent boxes that invite users to enter an email address and click

notice sufficiently disclosed that continued use of the website would bind users or manifest their consent to challenged practices. *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *10 (N.D. Cal. Oct. 10, 2025).

[2] *Sellers*, 73 Cal. App. 5th 444 does not say otherwise. The court stated that a website provider cannot "assume[] assent is given by mere use of the website, *based exclusively on the existence of a hyperlink that takes the consumer to the applicable set of contractual terms*." *Id.* at 470 (emphasis added). Here, assent is based on more than the mere existence of a hyperlink—it is based on clear notice through a prominent banner that informs users that continued use of the website constitutes assent.



Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

'GET STARTED,'" and the "underlined phrases 'Terms of Service' and 'Privacy' are hyperlinks, but they appear in the same tiny white font as the rest of the sentence." *Id.* at 882-83. Moreover, the "notice is set against a dynamic background of rolling movie clips that change over time and distract the user's attention," which "naturally direct[ ] the user's attention everywhere else, drawing the user's attention away from the barely readable critical text." *Id.* at 883.




In stark contrast, Venetian's notice is presented in a floating banner that is on the foreground of the webpage, which immediately draws the user's attention. Additionally, the hyperlink to Venetian's Privacy Notice is presented in a bright-red font rather than in the same color as the rest of text.

Similarly, in *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347 (S.D. Cal. 2024), the "Cookie Policy" banner is presented on a cluttered screen, the blue of the banner matches the blue of other web panels, and the white text of the banner blends in with the website's white background. *Id.* at 1358. Further, "[a] user may be distracted by the large red buttons inviting them to 'SHOP NOW' or 'SEARCH CRUISES.'" *Id.* at 1359. Conversely, Venetian's banner is a white box set against a dark backdrop, allowing it to immediately "pop out" to a user. And, critically, because Venetian's homepage has no clutter, the sole "Viva Las Venice" message does not distract users.

Venetian's notice is far more similar to the notice found reasonably conspicuous in *L.B.*, 2025 WL 2899514. It is presented in a banner that floats in the foreground, it "is written in clear

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

font," and it is presented "in a contrasting [white] box" against a dark backdrop with "no surrounding clutter." *Id.* at *10. And the hyperlink to Venetian's Privacy Notice is even more conspicuous. While the banner in *L.B.* is in the "middle" of the page, it is on the far right side. *Id.*[3] Venetian's Privacy Notice also is underlined *and* presented in a bright-red font that stands out prominently from surrounding text, while the Cookies Policy in *L.B.* is underlined but in the same color font as the rest of text. *Id.* All things considered, "a reasonably prudent internet user would see the notice and understand that the continued use of the website constitutes agreement to the [Privacy Notice], and that '[Privacy Notice]' is a hyperlink that ultimately leads to the terms of the [Privacy Notice]." *Id.*

### C. Plaintiff Again Assented To The Privacy Notice Via The Checkout Screen

While Plaintiff concedes that users are required to check a box reflecting they agree to Venetian's Terms & Conditions on Venetian's checkout screen, Plaintiff argues that users do not manifest assent to the Privacy Notice. Opp. at 12-13. But they do.

The Terms & Conditions expressly discloses that Venetian "collect[s], store[s], and otherwise process[es] personal information about [its] guests" and direct users to the Privacy Notice for more information, with the "Privacy Notice" hyperlink in a contrasting red color. The Terms & Conditions undoubtedly incorporate the Privacy Notice because the reference to the Privacy Notice is "clear and unequivocal" and "called to the attention of [users]" and the terms of the Privacy Notice are "easily available to the contracting parties." *Shaw v. Regents of Univ. of Ca.*, 58 Cal. App. 4th 44, 54 (1997). "The [Terms & Conditions] need not recite that [they] 'incorporate[]' [the Privacy Notice], so long as [they] guide the reader to the incorporated document." *Id.* A hyperlink "embedded within language that references the title of the linked page" suffices. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 930 (N.D. Cal. 2023).

Indeed, it is far more clear here that users are assenting to Venetian's Privacy Policy than it was in *Snyder*, 2025 WL 2426613, in which the court still found users agreed to the privacy policy. In that case, a "user is required to affirmatively check a box that states 'I agree to rate and room

[3] Plaintiff attempts to distinguish the notice in *L.B.*, to no avail. While the banner in *L.B.* contained included an "ACCEPT" button, users were *not* required to click it. 2025 WL 2899514, at *10.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

policies of this reservation.*' before being able to confirm the booking." *Id.* at *3. The asterisk at the end of this affirmation corresponded to the "*Policies" section directly below the "Confirm Booking" button, which had a drop-down menu with a hyperlink titled, "View the Motel 6 Privacy Policy." *Id.* at *4. According to the court, "by clicking the box agreeing to 'rate and room policies,' the user was agreeing to all policies including the 'Privacy Policy.'" *Id.* Here, the agreement to which users agree is not hidden in a dropdown menu. Users manifest assent far more directly—by clicking a button to affirm acceptance of Venetian's "Terms & Conditions," which expressly incorporate and provide a link to the Privacy Notice in a contrasting red color. Tellingly, Plaintiff does not address *Snyder* in his argument regarding the checkout screen.

Plaintiff cites *Herzog v. Super. Ct.*, 101 Cal. App. 5th 1280 (2024), but that case dealt with the distinct question regarding the formation of an arbitration agreement. In *Herzog*, a screen had the following text: "You understand and agree that your use of this website … is subject to the Terms of Use, Privacy Policy and any other acknowledgements listed below. *By ticking the boxes below you understand that your personal information, including your sensitive health information, will be collected, used and shared consistently with the Privacy Policy and Terms of Use*." *Id.* at 1289-90. "Underneath this paragraph were two boxes: one next to the statement, 'I agree to Terms of Use' and another next to, 'I agree to Privacy Policy.'" *Id.* at 1290. So it was unclear whether users were agreeing to the collection and sharing of data in a manner consistent with the terms of use or to binding arbitration. *Id.* at 1304. Here, Venetian is not seeking to enforce an arbitration agreement on one hand, while telling users something else altogether. It clearly asks users to agree to the hyperlinked Terms & Conditions, which expressly incorporate and hyperlink the Privacy Notice.

**D. <u>Venetian Privacy Notice Discloses The Challenged Practices</u>**

Plaintiff cannot dispute that Venetian's cookie banner and Privacy Notice both disclose the use of cookies and similar technologies to collect and share the data at issue here. Indeed, the Privacy Notice openly discloses that Venetian "may share your personal information[4] with third-

[4] The Privacy Notice defines "personal information" in a manner that broadly encompasses the alleged "guest records" at issue here—*e.g.*, contact information, demographic information, purchase

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

party advertising partners and social media platforms." So instead, Plaintiff claims Venetian allegedly used data in a manner inconsistent with the following provision of the Privacy Notice: "We do not collect or process sensitive personal information for purposes of inferring characteristics about consumers." Opp. at 13-14. Plaintiff misses the mark.

The relevant provision appears under the heading "California Consumer Privacy Statement," which "is intended to address the relevant notice requirements of the California Consumer Privacy Act of 2018 (as amended by the California Privacy Rights Act of 2020) and its implementing regulations (collectively, the "CCPA") and ***uses certain terms that have the meaning given to them in the CCPA***" (emphasis added). The CCPA, in turn, narrowly defines "sensitive personal information" to include items such as social security and passport numbers, financial account numbers in combination with credentials allowing access to an account, and health data. Cal. Civ. Code § 1798.140(ae). None of the "guest records" at issue here fall within that narrow statutory definition. Plaintiff is grasping at straws.

Plaintiff cannot escape the fact that any "reasonable [Venetian] user would have understood that [Venetian's] data collection included the dates of the trip, number of guests, and username, which Plaintiff alleges each constitute a 'guest record.'" *Snyder*, 2025 WL 2426613, at *4.

## III. PLAINTIFF'S SECTION 631 CLAIM FAILS FOR REASONS BEYOND CONSENT

### A. Plaintiff Cannot Show An Underlying Violation By The Third Parties

As set forth in the moving papers, Plaintiff cannot show an underlying violation by the Third Parties for two independent reasons: (1) Plaintiff cannot show the Third Parties obtained the "contents" of Plaintiff's alleged communications with Venetian; (2) Plaintiff cannot show the Third Parties read, attempted to read, or attempted to learn the contents of Plaintiff's alleged communications while they were "in transit." The opposition fails to rebut either.

*First*, Plaintiff cannot escape *King*, 2025 WL 1635419, where the court found the very same "guest records" do not constitute content. According to Plaintiff, the court merely "faulted plaintiff"

---

and transaction information, professional information, billing and financial information, government-issued ID information, user account information, travel details, preference information, content, credit and other financial services application information, and beyond. RJN, Ex. D.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

for not "identify[ing] with specificity what information she provided on Defendant's Website." *Id.* at *4. While that same infirmity infects Plaintiff's complaint, the court did far more than that. It examined the same *categories* of information alleged here and held they do not amount to actionable content under CIPA. *Id.*

Plaintiff provides no valid basis for this Court to depart from *King* as to any of the alleged data elements. Plaintiff admits that basic customer information—such as name, address, telephone number, email address, and zip code—generally is not "content." Opp. at 16. But Plaintiff argues that such data is "content" because the Third Parties are intercepting that he—and not some anonymous internet user—browsed and booked a Venetian stay. *Id.* at 17. But the mere fact that Plaintiff is a Venetian customer does not amount to content. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("subscriber number or identity" is not content). Plaintiff's reliance on *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Ca. Dec. 22, 2022), is misplaced, as that case addressed "personal medical information" and not routine customer information. *Id.* at 795.

Plaintiff's argument that button clicks and URLs reflecting room choices are "content" is likewise flawed. Opp. at 15-16. The cases cited by Plaintiff are inapposite because they involved searches in the healthcare context. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795-96 ("the URLs at issue here would not merely reveal the name of a Facebook user or group" but "include both the 'path' and the 'query string'"; "[t]he query string parameters in this search indicate that a search was done at the MedStar Health website for information about diabetes"); *Doe I v. Google LLC*, 2025 WL 1616720, at *1, *3 (N.D. Cal. June 6, 2025) (URLs containing "both the path and the query string" are "contents" where Google collected searches for practitioners who treat a patient's medical condition and searches for information about medical conditions). "[A]lthough descriptive URLs that reveal specific information about a user's queries may reflect the 'contents' of communications … Plaintiff's [Complaint] is devoid of any allegation describing [his] search queries, if any." *King*, 2025 WL 1635419 at *4.[5]

---

[5] Plaintiff notes that *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024), which held that button clicks are not content, was overturned by the Ninth Circuit. However, the Ninth Circuit provided no analysis on this issue and specifically stated that its decision "is not appropriate for publication and is not precedent." *Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Second*, Plaintiff cannot show the Third Parties actually read or attempted to read any alleged content while it was "in transit." Plaintiff contends that by detailing how the tracking technologies connect various points of data into a single transmission in real time, Plaintiff has alleged the Third Parties read the intercepted content in real time. Opp. at 18-21. But that merely describes how the software compiles the data. It has no bearing on whether the Third Parties are reading or attempting to read data while it is in transit. *See Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Even if TrustedForm *software* intercepts the contents of Plaintiffs' communications in real time and stores the recording on an ActiveProspect server that ActiveProspect employees can access, nothing in the record plausibly indicates that *ActiveProspect* reads or attempts to read the contents of the communication *while they are in transit*.") (emphasis added). The Third Parties cannot plausibly be viewed as "reading" the data while it is in transit simply because their software "combines" and "summarizes" various forms of data into a single transmission in real time.

In *Eating Recovery Ctr. LLC*, 2025 WL 2971090, the court rejected a similar theory in a case involving the same Meta technology—namely, that "before logging the data that it obtains from websites, Meta filters URLs to remove information that it does not wish to store," which "amounts to reading the communication while in transit." *Id.* at *5. "Reading or learning the contents of a communication requires some effort at understanding the substantive meaning of the communication." *Id.* "A filtering process that simply sorts out certain data—which may be better analogized to sorting mail than to reading it—can't fairly be characterized as an effort at understanding the meaning of the communication." *Id.* Here, use of the same automated processes to sort and filter data does not equate to reading and understanding of such data by the Third Parties.

Because Plaintiff has not shown the Third Parties violated Section 631(a), he cannot possibly show Venetian "aided" or "conspired" with them.

(9th Cir. June 20, 2025). Indeed, the court in *King* still relied on the district court's decision even after it was overturned.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**B. <u>Plaintiff Cannot Show Venetian Aided Any Alleged Violation</u>**

To establish the "aiding" of a CIPA violation, Plaintiff must show Venetian knew the Third Parties were violating Section 631(a) and substantially assisted that violation. *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024). Plaintiff claims that common law standard for aiding and abetting does not apply because Section 631(a) does not use the word "abet" and instead permits liability if Venetian "aids," "agrees with," "employs," or "conspires with" the Third Parties. Opp. at 21-22.

But Section 631(a) "does not define these terms," so it is necessary and proper to apply the common law standard. *Esparza*, 2024 WL 559241, at *6 (collecting cases applying common law standard of aiding and abetting where statutory definition is lacking).[6] Indeed, Plaintiff's own cited case "use[d] the common law definition for aiding and abetting liability" based on the reasoning of *Esparza*. *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *5 (C.D. Cal. July 31, 2024).[7]

Plaintiff argues that the common law standard is met because Venetian allegedly is "keenly aware of the marketing and advertising benefits it stood to gain" by using the Third Parties' tracking technologies. Opp. at 22-23. But so what? That does not mean that Venetian knew the Third Parties' advertising and marketing services were based on unlawful conduct. *See Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) ("[T]he Court cannot plausibly infer from

---

[6] *Esparza* does not, as Plaintiff contends, apply the common law standard simply because "[n]either side ... cited any cases addressing the scienter requirement for aiding and abetting claims under section 631(a), clause four." *Esparza*, 2024 WL 559241, at *6. Rather, the *Esparza* court "reasoned that, in the absence of a statutory definition for aiding and abetting, prior courts have applied the common law definition of aiding and abetting." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024). As the *Rogriguez* court noted, "this reasoning [is] persuasive." *Id.* at 1124.

[7] Other authorities cited by Plaintiff acknowledge the need to establish some level of knowledge and intent. *See Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *11 (N.D. Cal. Sept. 16, 2025) ("[C]ourts have generally interpreted the statute to require both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts."); *M. H. v. Done Glob. Inc.*, 2025 WL 629613, at *1 (N.D. Cal. Feb. 26, 2025) (derivative liability under Section 631(a) requires "knowledge and intent to aid those third parties in violating § 631(a)") (cleaned up).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Defendant's use of Adyen's fraud prevention services alone that Defendant knew that Adyen's services were based on its allegedly illegal interception and storing of financial information …").

Tellingly, Plaintiff does not even address the argument that it is utterly implausible to suggest Venetian secretly conspired with the Third Parties to steal Plaintiff's data when it told him, at multiple turns, about the collection and sharing of such data through robust disclosures that Plaintiff seemingly chose to ignore. Unsurprisingly, the cases upon which Plaintiff relies are distinguishable because consent either was lacking or not considered. *See Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 952 (E.D. Cal. 2025) ("Neither VITAS nor Invoca obtain the consent of any caller to VITAS's call center."); *Heiting*, 2024 WL 3738055, at *6 ("[D]espite knowingly allowing users' personal information (and personal vulnerabilities) to be shared with a wide range of corporate entities without limitations or safeguards, [Defendant] has refused to provide any notice to users how their communications will be used."); *Balestrieri*, 2025 WL 2776356, at *12 ("Defendant also relies on its Privacy Policy to argue that Plaintiff consented to disclosure, which the Court will not consider at this stage."); *M. H.*, 2025 WL 629613, at *1 ("Done's privacy policy fails to explicitly notify Plaintiff that Done planned to share his personal health information with those third parties.").

## IV. PLAINTIFF'S SECTION 632 CLAIM FAILS FOR REASONS BEYOND CONSENT

Plaintiff fails to overcome the long-settled presumption that online activity is not "confidential" within the meaning of Section 632. Plaintiff first contends that courts do not presume that internet communications are not confidential under Section 632. Opp. at 23. But the weight of authority says otherwise. *See, e.g.*, *King*, 2025 WL 1635419, at *5 ("Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality …"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746–47 (N.D. Cal. 2023) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632 …"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("in California, courts have developed a presumption that Internet communications do not reasonably give rise to that expectation" of confidentiality); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632 …"). Even the sole

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

case cited by Plaintiff recognized courts' use of the presumption but distinguished the facts alleged there as involving "sensitive financial information." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199-1200 (N.D. Cal. 2024).

Nor does Plaintiff offer any reason why "there is something unique about these particular internet communications which justify departing from the presumption." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799. The alleged communications here are far more similar to "inquiring about items of clothing on a retail website" (*Revitch*, 2019 WL 5485330, at *3) or to "a Home Depot customer conversing with a customer service agent" (*Swarts*, 689 F. Supp. 3d at 747) than they are to "health-related communications with a medical provider" (*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799) or to "sensitive financial information submitted to a tax preparation website" (*Smith*, 735 F. Supp. 3d at 1199).

Plaintiff cites *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024). But this case is a clear outlier. It does not acknowledge the presumption that internet communications are not confidential under Section 632, nor does it recognize that there must be something uniquely sensitive about the communications to justify departing from that presumption. The court does not even explain why it "agrees with Plaintiff that she has certainly alleged that she had a reasonable basis to believe that her communications were 'confidential.'" *Id.* at *11. In any event, Plaintiff could not have had a reasonable expectation of privacy here because Venetian's cookie banner and Privacy Notice disclosed the data collection and sharing alleged in the complaint.

## V. <u>CONCLUSION</u>

For these reasons and for those set forth in the moving papers, Plaintiff's complaint should be dismissed in its entirety and with prejudice.

Dated: December 22, 2025

**HUNTON ANDREWS KURTH LLP**

By: <u>*/s/ Jason J. Kim*</u>
Jason J. Kim
Hakop Stepanyan
Attorneys for Defendant VENETIAN LAS VEGAS GAMING, LLC