**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MAX VASQUEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VENETIAN LAS VEGAS GAMING, LLC,

Defendant.

Case No. 5:25-cv-07934-PCP

**DECLARATION OF STEFAN BOGDANOVICH IN RESPONSE TO THE COURT'S JUNE 25, 2026 ORDER**

I, Stefan Bogdanovich, declare as follows:

1. I am an attorney duly licensed to practice in the State of California and before this Court. I am an associate with the law firm of Bursor & Fisher, P.A. ("Bursor & Fisher" or "Plaintiff's Counsel"), counsel for Plaintiff Max Vasquez ("Plaintiff") in the above-captioned action. My knowledge of the matters stated herein is based on my active participation in all material aspects of the prosecution and settlement of this action (hereinafter, the "Litigation" or the "Action"). Unless otherwise noted, I could and would competently testify that the following facts are true and correct.

2. I hereby submit this declaration, on behalf of Bursor & Fisher, in compliance with this Court's June 25, 2026, Order Requiring Additional Disclosures ("Order") directing counsel for the proposed settlement class to describe the due diligence performed regarding the proposed administrator Epiq Class Action & Claims Solutions, Inc.'s ("Epiq") approach to the following issues: (i) any money or thing of value Epiq might receive beyond the fee described in the preliminary approval papers; (ii) any fees that class members may be charged by Epiq or its subcontractors; (iii) whether any data about settlement website visitors or class members will be shared with third parties; (iv) the use of AI to administer the settlement; and (v) the fraud prevention plan. ECF 37.

3. Plaintiff's Counsel has worked with Epiq on numerous cases over the past several years and has developed substantial experience working with Epiq throughout the notice and claims administration processes. Plaintiff's Counsel is familiar with the quality and thoroughness of Epiq's work product and overall claims administration processes, as well as its current and historical fees and rates in other Internet tracking pixel cases. Because of the nature of Plaintiff's Counsel's litigation practice, Plaintiff's Counsel has worked – and continues to work – with many major claims administrators currently offering class action notice and administration services, providing Plaintiff's Counsel with significant insight into their current and historical claims administration practices.

4. Specific to this case and the Order, Plaintiff's Counsel has conducted further due diligence which builds upon the institutional knowledge and experience set forth above.

Specifically, Plaintiff's Counsel sent the Order to Epiq in order for it to provide responses to the Court. In conducting due diligence on each of those responses, Plaintiff's Counsel held a video conference with Epiq on July 1, 2026, to discuss the specific declaration responses Epiq intended to submit and the factual bases supporting them. Plaintiff's Counsel posed additional follow-up questions via email and collected information from Epiq concerning the bases for its responses. Plaintiff's Counsel is satisfied that the responses provided by Epiq, as set forth in the Declaration of Cameron R. Azari, Esq. in Response to Court's June 25, 2026 Order, attached hereto as Exhibit A, are based upon credible facts and assurances from individuals at Epiq with the appropriate knowledge, authority, and experience.

5. In addition to reviewing the responses Epiq provided, Plaintiff's Counsel independently reviewed Epiq's settlement administration plan and performed the following due diligence regarding Epiq's approach to each of the issues identified in the Order:

a. With respect to any money or thing of value Epiq might receive in connection with the settlement beyond the fee described in the preliminary approval papers, Plaintiff's Counsel reviewed Epiq's settlement administration plan and its cost estimate for this case. The summary estimate is organized into line items, and Plaintiff's Counsel reviewed the detailed breakdown underlying each of those line items, which sets forth Epiq's fees for the particular services to be performed. The settlement administration plan makes no mention of interest or float on settlement deposits, payments from depository banks, or any revenue-sharing, ownership percentage, or markups on settlement services from any payment, claims processing, social media, or other vendors.

b. With respect to any fees class members or claimants could be charged by Epiq or its subcontractors in connection with the settlement, Plaintiff's Counsel reviewed the settlement administration plan, which does not provide for any such fees, including any interchange fees, dormancy fees, or retention of residual balances. The plan provides that applicable sales tax and bank fees are to be paid by the Settlement Fund.

c. With respect to whether data about visitors to the settlement website or other settlement class data will be shared with third parties not involved in administering the settlement, including via trackers or pixels, Plaintiff's Counsel reviewed Epiq's declaration. The declaration indicates that data about visitors to the settlement website or other Settlement Class data will not be shared with third-parties not involved in administering the settlement, including via trackers or pixels.

d. With respect to whether artificial intelligence will be used to administer the settlement, Plaintiff's Counsel reviewed the settlement administration plan. The plan sets forth standard hourly rates for the services to be performed, reflecting that those services are performed by professionals compensated on an hourly basis.

e. With respect to the fraud-prevention plan, Plaintiff's Counsel reviewed Epiq's notice plan. The notice plan states that, before sending email notice, Epiq will use email validation and hygiene tools to standardize email addresses, verify whether they are valid, and identify and remove addresses that present a fraud threat, such as those maintained by bots, spammers, and phishers. Epiq will use ClickCease, a third-party ad-management platform, to provide real-time ad monitoring, analyze fraudulent traffic, block clicks from fraudulent sources, and quarantine dangerous IP addresses in order to reduce wasted, fraudulent, or otherwise invalid traffic. In addition, Epiq will use EpiqShield™ to prevent, detect, and analyze possible fraudulent claims through numerous anti-fraud measures, technology, and information security resources, including digital footprint monitoring and secure banking solutions. As part of that process, Epiq will analyze the claim forms against more than 30 different indicia of fraud and assign each online claim-form submission a high, medium, or low fraud score. Epiq will then work with counsel for the parties to review the results and assess whether any categories of claim forms should be denied as fraudulent.

6. Counsel has concluded that the selection of Epiq to provide settlement administration in this action "serve[s] the best interests of the settlement class." Order at 2.

Plaintiff's Counsel solicited bids from four reputable administrators—Angeion, Epiq, Simpluris, and Veritas. Epiq was selected because its bid was competitively priced and because it had experience successfully administering other Internet tracking pixels. Plaintiff's Counsel is also satisfied that there are no potential conflicts of interest or potential appearances of conflict of interest with respect to the selection of the administrator or any bank or other vendor used by the administrator.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 16th day of July, 2026, at Walnut Creek, California.

*<u>/s/ Stefan Bogdanovich</u>*
Stefan Bogdanovich