**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

[*Additional Counsel on Signature Page*]

*Class Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MAX VASQUEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VENETIAN LAS VEGAS GAMING, LLC,

Defendant.

Case No. 5:25-cv-07934-PCP

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Date: December 3, 2026
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. P. Casey Pitts

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 3, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, located at 280 South First Street, Courtroom 8, 4th Floor, San Jose, California 95113, in the courtroom of Hon. P. Casey Pitts, Plaintiff Max Vasquez ("Plaintiff"), by and through his undersigned counsel of record, will and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for an order: (i) granting final approval of the proposed Class Action Settlement Agreement (ECF No. 36-2), as amended by the Addendum thereto (ECF No. 44) (together, the "Settlement"); (ii) certifying the Settlement Classes for the purposes of settlement; and (iii) ordering distribution of the Booking Settlement Fund and the Browsing Settlement Fund.

This Motion is made on the grounds that the proposed Settlement Agreement is fair, reasonable, and adequate, and that final approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiff requests that the Court enter the accompanying [Proposed] Final Approval Order and Judgment.

The Motion is based on the Memorandum of Points and Authorities and Appendix A filed herewith; the Settlement Agreement (ECF No. 36-2) and the Addendum thereto (ECF No. 44); the October 20, 2026 Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan; the Declaration of Stefan Bogdanovich in Support of Plaintiff's Motion for Preliminary Approval, ECF No. 36-1 (the "Bogdanovich Decl."), and the exhibits attached thereto; Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and Service Award filed concurrently herewith; the [Proposed] Final Approval Order and Judgment submitted herewith; the pleadings and papers on file in this Litigation; and such other evidence and argument as may subsequently be presented to the Court.

Dated: October 20, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Stefan Bogdanovich*
Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Kyle D. Gordon (*admitted pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: kgordon@bursor.com

*Class Counsel*

**TABLE OF CONTENTS**

**PAGE(S)**


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

INTRODUCTION ........ 1

PROCEDURAL AND FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 2

I. CERTIFICATION OF THE SETTLEMENT CLASSES IS APPROPRIATE ........ 2

II. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ........ 3

- A. The *Hanlon* Factors Weigh in Favor of Final Approval ........ 4
  1. The Strength of Plaintiff's Case ........ 4
  2. Risk of Continuing Litigation ........ 5
  3. Risk of Maintaining Class Action Status ........ 6
  4. Amount Offered in Settlement ........ 7
  5. The Extent of Discovery ........ 9
  6. Experience and Views of Counsel ........ 9
  7. The Presence of a Governmental Participant ........ 10
  8. The Response of Class Members Has Thus Far Been Overwhelmingly Positive ........ 10
- B. The Rule 23(e)(2) Factors Weigh in Favor of Final Approval ........ 11
  1. The Class Representative and Class Counsel Have Adequately Represented the Settlement Classes (Fed. R. Civ. P. 23(e)(2)(A)) ........ 11
  2. The Settlement Was Negotiated at Arm's Length ........ 11
  3. The Settlement Provides Adequate Relief to the Settlement Classes ........ 12
  4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other ........ 14

III. THE NOTICE PLAN PROVIDED THE BEST NOTICE PRACTICABLE ........ 14

CONCLUSION ........ 16

APPENDIX A ........ 18

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alvarez v. Sirius XM Radio Inc.*,
2020 WL 7314793 (C.D. Cal. July 15, 2020) ........ 13

*Arreola v. Shamrock Foods Co.*,
2021 WL 4220630 (C.D. Cal. Sept. 16, 2021) ........ 10

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ........ 10

*Carlotti v. ASUS Computer Int'l*,
2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ........ 9

*Carter v. XPO Logistics, Inc.*,
2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ........ 9

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........ 14

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........ 3

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,
533 F. Supp. 3d 881 (N.D. Cal. 2020) ........ 10

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ........ 5

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 6

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........ 4, 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 4, 16

*In re Apple Inc. Sec. Litig.*,
2024 WL 3297079 (N.D. Cal. June 3, 2024) ........ 6

*In re California Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) ........ 4

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ........ 14

*In re Google Referrer Header Privacy Litig.*,
2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ........ 15

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........ 1

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........ 9

*In re Meta Pixel Tax Filing Cases*,
826 F.Supp.3d 1217 (N.D. Cal. 2026) ........ 6

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........ 6

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........ 11

*In re Packaged Seafood Prods. Antitrust Litig.*,
2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ........ 15

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........ 14

*Johnson v. Triple Leaf Tea Inc.*,
2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........ 7

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ........ 7

*Larsen v. Trader Joe's Co.*,
2014 WL 3404531 (N.D. Cal. July 11, 2014) ........ 5

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........ 7

*Low v. Trump Univ., LLC*,
246 F. Supp. 3d 1295 (S.D. Cal. 2017) ........ 9

*Montera v. Premier Nutrition Corp.*,
2025 WL 751542 (N.D. Cal. Mar. 10, 2025) ........ 8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........ 5, 7

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ........ 4, 7

*Perks v. Activehours, Inc.*,
2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ........ 12, 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................ 4, 5, 7

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ........................................ 1

*Smith v. Apple, Inc.*,
2025 WL 1266927 (N.D. Cal. May 1, 2025) ........................................ 1, 3

*Smith v. Keurig Green Mountain, Inc.*,
2023 WL 2250264 (N.D. Cal. Feb. 27, 2023) ........................................ 3

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................ 3

*Torchia v. W.W. Grainger, Inc.*,
304 F.R.D. 256 (E.D. Cal. 2014) ........................................ 10

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................ 6

*Villegas v. J.P. Morgan Chase & Co.*,
2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................ 12

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) ........................................ 8

**STATUTES**

28 U.S.C. § 1715 ........................................ 10, 16

Cal. Penal Code § 637.2(a)(1) ........................................ 8

**RULES**

Fed. R. Civ. P. 23 ........................................ 16

Fed. R. Civ. P. 23(a) ........................................ 3

Fed. R. Civ. P. 23(b) ........................................ 3, 6

Fed. R. Civ. P. 23(c) ........................................ 14

Fed. R. Civ. P. 23(e) ........................................ passim

Fed. R. Civ. P. 23(f) ........................................ 6

**OTHER AUTHORITIES**

William B. Rubenstein, *Newberg and Rubenstein on Class Actions*, § 13.44 (6th ed. 2025) ........................................ 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On August 26, 2026, this Court preliminarily approved the Settlement and directed notice to be sent to the Settlement Classes.[1] ECF No. 45 ("Preliminary Approval Order" or "PA Order"). The Settlement Administrator has implemented the Court-approved notice plan, which has achieved excellent results to date, as evidenced by the overwhelmingly positive reaction from the Settlement Classes. To date, over 20.33% of the Booking Settlement Class Members (7,150 out of 35,159) have submitted claims, as well as an additional 209,657 claims from the Browsing Settlement Class. Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan ("Azari Decl.") ¶ 40. To date, no opt-outs or objections have been submitted. *Id.* ¶ 38. As courts in this District have repeatedly noted, "[a] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 598 (N.D. Cal. 2020) (quoting *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015)); *see also Smith v. Apple, Inc.*, 2025 WL 1266927, at *6 (N.D. Cal. May 1, 2025) ("[T]he settlement terms were publicized through a notice process that the Court has deemed adequate. Only nineteen members requested exclusion from the settlement, and no Class Members objected.").

In all, this is an excellent settlement that has thus far received the overwhelming approval of the Settlement Classes. The Court should have no hesitation in granting Final Approval.

As the Court's Civil Standing Order requires, Plaintiff's responses to each of the final approval items in the Northern District of California's Procedural Guidance for Class Action Settlements (the "Procedural Guidance") are set forth in Appendix A hereto.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 17, 2025, Plaintiff Max Vasquez filed this putative class action alleging that Defendant Venetian Las Vegas Gaming, LLC ("Defendant") disclosed the guest record information

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement (ECF No. 36-2) ("Settlement" or "Settl."), as amended by the Addendum (ECF No. 44).

and confidential communications of users of its website, venetianlasvegas.com (the "Website"), to third parties Heap, Google, and Meta, without permission and in violation of Sections 631 and 632 of the California Invasion of Privacy Act ("CIPA"). ECF No. 1. After months of hard-fought litigation, the Parties put down their swords and agreed to settle the dispute.

The Parties engaged in motion practice, fully briefing Defendant's motion to dismiss, which the Court heard on January 15, 2026. ECF Nos. 14, 21, 23, 28. The Parties also engaged in formal discovery. Plaintiff served interrogatories and requests for production, to which Defendant served responses and objections, and Defendant produced data regarding the approximate size of the Settlement Classes. Bogdanovich Decl. ¶ 7. Plaintiff also served subpoenas on two of the third parties, Google and Meta. *Id.* And the Parties drafted comprehensive mediation briefs setting forth their respective positions. *Id.*

In short, both sides had a clear understanding of the strengths and weaknesses of their case. On April 9, 2026, the Parties, through their respective counsel, participated in an approximately six-hour mediation with the Hon. Diane M. Welsh (Ret.), a neutral mediator affiliated with JAMS and a former United States Magistrate Judge for the Eastern District of Pennsylvania. *Id.* ¶¶ 6, 9.

At the mediation, the Parties reached agreement on all material terms of a class action settlement and subsequently executed a term sheet. *Id.* ¶ 9. After further negotiations, the Parties executed the full-form Settlement on June 9, 2026. *Id.* ¶ 10.

On June 24, 2026, Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement. ECF No. 36. On June 25, 2026, the Court ordered additional disclosures concerning the proposed Settlement Administrator, which Class Counsel and Epiq provided on July 16, 2026. ECF Nos. 37, 40. The Parties subsequently executed an Addendum to the Settlement dated August 21 and 24, 2026, and filed on August 25, 2026 ECF No. 44. The Court granted Plaintiff's Motion for Preliminary Approval on August 26, 2026. ECF No. 45.

## ARGUMENT

### I. CERTIFICATION OF THE SETTLEMENT CLASSES IS APPROPRIATE

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the

certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Certification of the Settlement Classes is appropriate here, as the Court found at Preliminary Approval.

On August 26, 2026, the Court preliminarily approved the following Settlement Class definitions, after concluding that the requirements of Rule 23(a) and (b)(3) were satisfied:

- *Booking Settlement Class*: "[A]ll California residents who, while in California, during the period from September 18, 2024 through March 16, 2026, provided personal information necessary to make a reservation for a Venetian hotel stay through the Venetian Las Vegas website (venetianlasvegas.com)." ECF No. 45 ¶¶ 5, 7.

- *Browsing Settlement Class*: "[A]ll California residents who, while in California, during the period from September 18, 2024 through March 16, 2026, accessed and/or navigated the Venetian Las Vegas website (venetianlasvegas.com)." ECF No. 45 ¶¶ 6, 7.

No substantive changes have occurred since that ruling, and, more importantly, as of October 19, 2026, no objections have challenged that conclusion. Azari Decl. ¶ 38. Further, "no facts that would affect these requirements have changed since the Court preliminarily certified the class[.]" *Smith*, 2025 WL 1266927, at *3. The Court may therefore rely on the same rationale as explained in the Preliminary Approval Order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3) in connection with final approval. *See Smith*, 2025 WL 1266927, at *3 ("[T]his order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval."); *see also Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023) (same).

## II. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"[S]trong judicial policy [] favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); Herbert B. Newberg and William B. Rubenstein, *Newberg and Rubenstein on Class Actions*, § 13.44 (6th ed. 2025) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

In evaluating a class action settlement, courts in the Ninth Circuit consider the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (the "*Hanlon* factors"): (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members to the proposed settlement." *Id.* at 1026.

In addition to these factors, courts also consider the four enumerated factors in Federal Rule of Civil Procedure 23(e)(2). There is significant overlap between the Rule 23(e)(2) and *Hanlon* factors, which complement rather than displace each other. *See In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) ("The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis.").

### A. The *Hanlon* Factors Weigh in Favor of Final Approval

#### 1. The Strength of Plaintiff's Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff[s'] likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories, and defenses on both sides before engaging in arm's-length negotiations with Defendant's counsel. *See generally* ECF No. 36; Bogdanovich Decl. Although Plaintiff and Class Counsel are confident in his claims, they recognize that a favorable outcome was not assured, and that even if Plaintiff and the Settlement Classes could ultimately secure a favorable judgment at trial, the expense,

duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain. Defendant vigorously denies Plaintiff's allegations and denies that it is liable for any damages. Settl., Recitals ¶ 4. In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance that the Settlement Classes would prevail—or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks. Indeed, Defendant has argued that Plaintiff and Settlement Class Members consented to the alleged data sharing through Defendant's cookie banner, Privacy Notice, and Terms & Conditions—a defense on which defendants in similar CIPA cases have prevailed. ECF No. 36 at 6-7; Bogdanovich Decl. ¶ 18. Defendant has also argued that Plaintiff cannot satisfy Section 631's "in transit" requirement—an issue on which courts remain divided—and that the communications at issue are not "confidential" within the meaning of Section 632. ECF No. 36 at 7. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Settlement Classes with an outstanding opportunity to obtain significant relief at this stage in the litigation. The Settlement also eliminates the risks that might prevent the Settlement Classes from obtaining any relief. *See Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Accordingly, this factor weighs in favor of final approval.

### 2. <u>Risk of Continuing Litigation</u>

Next, approval of the Settlement is appropriate given the risks associated with continued litigation. By reaching a favorable settlement now, Plaintiff seeks to avoid significant expense and delay while ensuring recovery for the Settlement Classes. "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)) (further citation omitted). "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification[.]" *Id.* (citing *Rodriguez*, 563 F.3d at 966).

Here, in the absence of settlement, the Parties would have to continue litigating through a

ruling on Defendant's motion to dismiss, class certification, summary judgment, trial, and any appeals. Given the disposition of the case, "[f]urther litigation, absent settlement would likely be lengthy and would present several difficulties to resolve." *In re Apple Inc. Sec. Litig.*, 2024 WL 3297079, at *3 (N.D. Cal. June 3, 2024). Plaintiff faced significant hurdles to defeat Defendant's motion to dismiss, get the proposed classes certified, defeat Defendant's anticipated summary judgment motion, and prevail at trial and on any subsequent appeal. Bogdanovich Decl. ¶ 18. In addition, at the time of settlement, the risks to Plaintiff's theory of liability were compounded by developments in the California Legislature, which could have eviscerated Plaintiff's claims. ECF No. 36 at 8. Accordingly, this factor weighs in favor of final approval.

**3. <u>Risk of Maintaining Class Action Status</u>**

In addition to the risks of continuing the litigation, Plaintiff also faces risks in certifying a class and maintaining class status through trial. The Court has preliminarily certified the Settlement Classes for settlement purposes but has not certified the proposed classes otherwise. Class certification of CIPA claims is far from assured. *See In re Meta Pixel Tax Filing Cases*, 826 F.Supp.3d 1217, 1238 (N.D. Cal. 2026) (Pitts, J.) (plaintiffs failed to satisfy Rule 23(b)(3)'s predominance requirement); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 587 (N.D. Cal. 2025) (finding commonality and predominance not satisfied for CIPA § 631 claim). And even where a contested motion for class certification of CIPA claims has been granted, the defendant has prevailed at summary judgment. *See Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025); *see also* Bogdanovich Decl. ¶ 17. While Plaintiff believes he could certify the proposed classes and establish that Defendant enabled third parties to intercept Settlement Class Members' communications, he is also keenly aware that this may not be enough.

Moreover, even assuming that the Court were to grant a motion for class certification, the classes could still be decertified at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). Additionally, should the Court certify the classes, Defendant may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and

delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff[s] and the Class" ensures Settlement Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay, and this factor therefore weighs in favor of final approval.

**4. <u>Amount Offered in Settlement</u>**

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (citing *Rodriguez,* 563 F.3d at 965). Instead, the Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* In assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Just.*, 688 F.2d at 628). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Indeed, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). Here, the total monetary value of the Settlement represents an outstanding recovery for the Settlement Classes.

In this case, Defendant has agreed to pay $1,600,000 into two non-reversionary settlement funds: a $931,713.50 Booking Settlement Fund and a $668,286.50 Browsing Settlement Fund. Settl. ¶¶ 1.5, 1.8, 1.39. Each Booking Settlement Class Member with an Approved Claim is entitled to a *pro rata* share of the Booking Settlement Fund, and each Browsing Settlement Class Member with an Approved Claim is entitled to a *pro rata* share of the Browsing Settlement Fund, after deduction of a proportional amount of the Settlement Administration Expenses, any Fee Award, and any Service Award. Settl. ¶ 2.1(a)-(b). As of October 19, 2026, 7,150 claims have been received from the Booking Settlement Class and 209,657 from the Browsing Settlement

Class. *See* Azari Decl. ¶ 40. At the current claims rate of approximately 20% for the Booking Settlement Class and 21% for the Browsing Settlement Class, assuming that attorneys' fees, costs, and expenses, and the service award are approved in full, Class Counsel estimates each Booking Settlement Class Member providing a valid claim form will be entitled to a *pro rata* portion of approximately $70.21, and each Browsing Settlement Class Member providing a valid claim form will be entitled to approximately $1.72.[2] These figures are likely to change for two reasons. First, more claims will be filed before the November 24, 2026 deadline. Second, Epiq has yet to complete its fraud scoring, and will work with counsel for the parties to review the results and assess whether categories of Claim Forms should be denied as fraudulent. *See* Azari Decl. ¶¶ 40, 43-44. Assuming the Browsing Settlement Class Members' claims rate 10%, each Browsing Settlement Class Member providing a valid claim form will be entitled to approximately $3.60.

This is an excellent recovery and compares favorably to other common-fund settlements in privacy cases concerning tracking technologies on websites. *See* Bogdanovich Decl. ¶ 12 & Ex. 2. And it is especially excellent given that, while CIPA allows for statutory damages of $5,000 per violation (Cal. Penal Code § 637.2(a)(1)), an award of statutory damages is potentially subject to reduction on due process grounds. *See, e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of statutory damages); *Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025) (awarding reduced statutory damages after finding full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals"). Moreover, the actual damages at issue here are difficult to precisely quantify. ECF No. 36-4 at 3.

Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the proposed Settlement is more than reasonable. *See*

---

[2] This estimate is calculated as follows. Total deductions: $533,333.33 Fee Award + $5,000 Service Award + $200,000 Settlement Administration Expenses = $738,333.33. Booking Settlement Class: ($931,713.50 – (58.2% × $738,333.33 total deductions)) ÷ (7,150 claims) = $70.21. Browsing Settlement Class: ($668,286.50 – (41.8% × $738,333.33 total deductions)) ÷ (209,657 claims) = $1.72.

*Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *3 (N.D. Cal. Oct. 18, 2019) ("The amount of the settlement is fair, adequate and reasonable given the risks of continued litigation.").

Accordingly, this factor weighs heavily in favor of final approval.

**5. The Extent of Discovery**

Under this factor, courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiff, by and through his counsel, has conducted extensive research and investigation, including a pre-suit investigation of Defendant's practices, and the Parties engaged in formal discovery before reaching the Settlement. ECF No. 36 at 10; Bogdanovich Decl. ¶¶ 7-8, 20.

Plaintiff served interrogatories and requests for production, to which Defendant responded, and served third-party subpoenas on Google and Meta. Bogdanovich Decl. ¶ 7. Defendant also produced data regarding the approximate number of California residents who, while in California, during the period from September 18, 2024 through March 16, 2026, made a reservation for a Venetian hotel stay through the Website or accessed and/or navigated the Website. *Id.* And the Parties drafted comprehensive mediation briefs setting forth their respective positions. *Id.* In other words, the Parties understood the size of the Settlement Classes and the strengths and weaknesses of their respective positions before reaching the Settlement.

Thus, the Parties had sufficient information to assess the strengths and weaknesses of their claims and defenses in reaching the Settlement. Bogdanovich Decl. ¶ 8. Accordingly, this factor also weighs in favor of final approval. *See Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted).

**6. Experience and Views of Counsel**

"Where '[b]oth Parties are represented by experienced counsel,' the recommendation of experienced counsel to adopt the terms of the proposed settlement 'is entitled to great deal of weight.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. 2017) (internal citations omitted). Specifically, "[t]he recommendations of plaintiffs' counsel should be given a

presumption of reasonableness" as the "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Bogdanovich Decl. ¶¶ 25-30 & Ex. 4 (Firm Resume of Bursor & Fisher, P.A.). Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Settlement Classes while sparing the Settlement Classes from the uncertainties of continued and protracted litigation. *Id.* ¶ 14.

**7. The Presence of a Governmental Participant**

No governmental agency is involved in this litigation, but the Attorney General of the United States and 48 officials (the Attorneys General of 43 states and the United States Territories) have been notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and have had an opportunity to raise any concerns or objections, and none have done so. Azari Decl. ¶ 6.

**8. The Response of Class Members Has Thus Far Been Overwhelmingly Positive**

The objection and opt-out deadline is November 24, 2026. PA Order ¶¶ 23-24. Not a single Class Member has objected to the Settlement or opted out as of October 19, 2026. *See* Azari Decl. ¶ 38. Such an overwhelmingly positive response from Class Members strongly supports final approval. *See Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("No objections have been submitted. The absence of a negative reaction weighs in favor of approval.") (cleaned up); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 270 (E.D. Cal. 2014) ("Significantly, no objections were filed by Class Members following service of the Class Notice Packet. … Therefore, this factor weighs in favor of the Settlement.") (internal citation omitted); *Arreola v. Shamrock Foods Co.*, 2021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021) ("A low proportion of opts outs and objections 'indicates that the class generally approves of the settlement.' Therefore, this factor weighs in favor of final approval.") (citations omitted).

### B. The Rule 23(e)(2) Factors Weigh in Favor of Final Approval

#### 1. The Class Representative and Class Counsel Have Adequately Represented the Settlement Classes (Fed. R. Civ. P. 23(e)(2)(A))

As the Court already found at Preliminary Approval, "Plaintiff and Proposed Class Counsel have adequately represented and will continue to adequately represent the Settlement Classes." PA Order ¶ 4. There is no reason to deviate from that conclusion. Plaintiff has been consistently involved in this litigation, providing valuable insight and useful facts allowing Class Counsel to effectively litigate this action and negotiate this Settlement. Further, Plaintiff regularly communicated with Class Counsel regarding various issues pertaining to this case and will continue to do so until the Settlement is approved, and its administration completed. Bogdanovich Decl. ¶ 32; Declaration of Max Vasquez ("Vasquez Decl.") ¶¶ 4-6, 8. Likewise, Class Counsel vigorously prosecuted this action and will continue to do so through final approval. Bogdanovich Decl. ¶¶ 20-21. Class Counsel identified and investigated the claims in this lawsuit and the underlying facts and successfully negotiated this Settlement. *Id.* ¶ 20. Those efforts led to a $1.6 million non-reversionary common fund for the Settlement Classes. And Class Counsel is sufficiently experienced in class action litigation generally, and privacy litigation in particular. Bogdanovich Decl. ¶¶ 25-30.

Accordingly, this factor weighs in favor of final approval.

#### 2. The Settlement Was Negotiated at Arm's Length

In evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations. When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Garner*, 2010 WL 1687832, at *13. Here, counsel for both Plaintiff and Defendant are experienced in class action litigation, engaged in an approximately six-hour mediation and subsequent negotiations over the full-form Settlement, and reached this Settlement with the assistance of an experienced neutral, the Hon. Diane M. Welsh (Ret.). *See* Bogdanovich Decl. ¶¶ 6, 9-10, 25-29 & Ex. 4. In other words, the negotiations

were conducted at arm's length, were non-collusive and well-informed (in that they were conducted after an assessment of the strengths and weaknesses of the claims on both sides), were conducted between counsel on both sides with decades of class action experience, and utilized the assistance of a well-respected mediator. Use of a mediator "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

Under such circumstances, the proposed Settlement is entitled to a presumption of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found that Class Counsel have substantial experience in litigating and settling consumer class actions. Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case. . . The Settlement was also the product of arm's-length negotiations through mediation sessions and follow-up communications supervised by [an experienced neutral]. There is no indication of any collusion between the parties."). Accordingly, the second Rule 23(e)(2) factor has been met.

**3. <u>The Settlement Provides Adequate Relief to the Settlement Classes</u>**

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). These factors subsume several *Hanlon* factors, discussed *supra*, including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor 2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the amount offered in settlement" (*Hanlon* Factor 4). As noted above, the Settlement has met each of the *Hanlon* factors. *See* Section II.A, *supra*.

As to "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates

filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.* (cleaned up). Here, the Settlement Administrator is applying methods to detect fraudulent claims and duplicate submissions, including EpiqShield™, which scores each online Claim Form against more than 30 indicia of fraud. Azari Decl. ¶¶ 43-44. Under the terms of the Settlement, each Booking Settlement Class Member with an Approved Claim is entitled to "a *pro rata* portion of the Booking Settlement Fund," and each Browsing Settlement Class Member with an Approved Claim is entitled to "a *pro rata* portion of the Browsing Settlement Fund," payable by check or digital payment. Settl. ¶ 2.1(b)-(c).

And the Claim Form is simple, asking each claimant only to provide contact information, check a box attesting to membership in the Booking and/or Browsing Settlement Class, and select a payment method. Settl. Ex. A. The Court should find that this "process is not unduly demanding, and [] the proposed method of distributing relief to the Class is effective." *Alvarez*, 2020 WL 7314793, at *6.

Next, as to "the terms of any proposed award of attorneys' fees," Class Counsel filed a fee application concurrently with this Motion. Consistent with the Settlement, the application seeks an award of $518,769.90 in attorneys' fees and $14,563.43 in costs and expenses, which together do not exceed one-third of the Total Settlement Fund, and a service award in the amount of $5,000 for Plaintiff Max Vasquez. *See* Settl. ¶¶ 8.1, 8.4. That request is more than reasonable for the reasons set forth in the Motion for Attorneys' Fees. Any Fee Award is payable within ten days after entry of the Final Judgment, subject to Class Counsel's undertaking to repay it if the Final Judgment is reversed or rendered void on appeal. Settl. ¶ 8.3. Finally, there are no agreements between Plaintiff, Class Counsel, and Defendant other than the Settlement. The Settlement therefore provides adequate relief to the Settlement Classes under Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

**4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other**

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). In assessing this factor, "the Court considers whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, within each Settlement Class, all Class Members are entitled to the same relief under the Settlement, and all Class Members with Approved Claims will receive a *pro rata* distribution of the corresponding settlement fund based on the number of Approved Claims. Settl. ¶ 2.1(b). Courts in this Circuit have found that allocating settlement benefits to Settlement Class Members on a *pro rata* basis is equitable. *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable). And the larger allocation to the Booking Settlement Class reflects that its members—who typed personal information into the Website's reservation form fields—have stronger claims under Section 632, an allocation the Court preliminarily found "reasonable and equitable." PA Order ¶ 4; *see also* ECF No. 36-4 at 1-2. Thus, this factor also weighs in favor of granting final approval.

## III. THE NOTICE PLAN PROVIDED THE BEST NOTICE PRACTICABLE

For a settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation omitted).

Pursuant to the Notice Plan approved by the Court, Defendant provided the Settlement Administrator, Epiq, with a Class List containing 71,218 unique identified Settlement Class

Member records, of which 71,214 had contact information and were sent notice via email and/or mail. *See* Azari Decl. ¶ 11. Epiq sent 68,801 direct Email Notices to 68,056 identified Settlement Class Members with valid email addresses. *Id.* ¶ 12. If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier. *Id.* ¶ 15. For Email Notices for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, a full mailbox, or technical autoreplies, at least two additional attempts were made to deliver the Notice by email. *Id.* Epiq then sent Postcard Notice by U.S. mail to the 154 Settlement Class Members for whom email was unsuccessful or unavailable. *Id.* ¶ 16. Epiq confirmed that 64,263 Email Notices and 153 Postcard Notices were delivered successfully. *Id.* ¶ 20. Thus, the individual notice efforts reached approximately 90.4% of the identified Settlement Class Members. *See id.* The Email and Mail Notices informed Settlement Class Members of the Settlement and directed them to the Settlement Website for more information. True and correct copies of the Email Notice and Mail Notice are attached as Attachments 2 and 3 to the Azari Declaration. Epiq will also send reminder Email Notices thirty and seven days before the Claims Deadline. PA Order ¶ 18.

Because Defendant does not have contact information for the Browsing Settlement Class, Bogdanovich Decl. ¶ 35, the Notice Plan also included publication notice, including digital display advertising (in English and Spanish), social media advertising, sponsored search listings, and an informational release (in English and Spanish). Azari Decl. ¶¶ 21-34. These efforts are expected to generate approximately 66.3 million impressions. *Id.* ¶ 29. By Epiq's estimation, the Notice Plan will reach at least 70% of the Settlement Classes, which is consistent with judicial guidelines. *Id.* ¶ 48; *In re Packaged Seafood Prods. Antitrust Litig.*, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) ("The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable.") (cleaned up). Publication notice was the best practicable notice for Settlement Class Members whom Defendant cannot identify because "direct notice to class members by mail, e-mail or other electronic individualized means [wa]s impractical." *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *7 (N.D. Cal. Mar. 26, 2014).

Epiq also established a Settlement Website, www.VenetianLasVegasSettlement.com, that

included case-related documents, a set of frequently asked questions, information on how to object to the Settlement or request exclusion, contact information for the Settlement Administrator, and instructions for obtaining other case-related information, and through which Settlement Class Members may submit Claim Forms online. Azari Decl. ¶ 35. Epiq also established a toll-free telephone number. *Id.* ¶¶ 36-37. As of October 19, 2026, the Settlement Website had received 208,686 unique sessions, and the toll-free number had received 88 calls. *Id.* ¶¶ 35-36. Finally, Epiq provided notice to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.* ¶ 6.

These efforts met the requirements for effective notice under Rule 23 and apprised the Settlement Classes of the Settlement. *Id.* ¶¶ 49-51. This has resulted in 216,807 pending claims, zero objections, and zero requests for exclusion as of October 19, 2026. *Id.* ¶¶ 38, 40. Accordingly, Plaintiff asks the Court to find: (1) the Notice Plan was reasonably calculated to give actual notice to Class Members of their right to receive benefits from the Settlement or to exclude themselves from or object to the Settlement; and (2) the Notice Plan satisfied due process requirements and any other applicable requirements under federal law. *Hanlon*, 150 F.3d at 1024-25.

Epiq effectuated the Notice Plan, as ordered by the Court in its Preliminary Approval Order, and the Notice Plan was designed to ensure the widest possible reach and provide the most practicable notice of the Settlement to Settlement Class Members. Epiq's efforts as Settlement Administrator, and the Notice as effectuated, support final approval.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court finally approve the Settlement and finally certify the Settlement Classes. A [Proposed] Final Approval Order and Judgment are submitted herewith.

Dated: October 20, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Stefan Bogdanovich*
Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Kyle D. Gordon (*admitted pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: kgordon@bursor.com

*Class Counsel*

# APPENDIX A

## PLAINTIFF'S RESPONSES TO THE NORTHERN DISTRICT OF CALIFORNIA'S PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS

Pursuant to the Court's Civil Standing Order, Plaintiff reproduces below each final approval requirement of the Procedural Guidance, followed immediately by his response. Plaintiff's responses to the Procedural Guidance's preliminary approval requirements are set forth in the Appendix to his Motion for Preliminary Approval (ECF No. 36-4) and are incorporated by reference. Because the Preliminary Approval Order requires this Motion to be filed before the November 24, 2026 Claims Deadline and Objection/Exclusion Deadline (ECF No. 45 ¶¶ 23-24, 26), the figures below are as of October 19, 2026, and will be updated in Epiq's supplemental declaration to be filed seven days before the Final Approval Hearing. *Id.* ¶ 37.

## FINAL APPROVAL

1. **CLASS MEMBERS' RESPONSE—The motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who opted out, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.**

*Undeliverable notices.* Epiq sent 68,801 Email Notices to 68,056 identified Settlement Class Members on the Class List for whom a valid email address was available. Azari Decl. ¶ 12. After all re-send attempts, 1,660 Email Notices remained undeliverable. Epiq mailed Mail Notice to 154 identified Settlement Class Members for whom email was unsuccessful or unavailable, and for whom an associated postal address was available, of which one was returned as undeliverable after "skip-tracing." Azari Decl. ¶¶ 16-19. The publication components of the Notice Plan—digital and social media notice, sponsored search listings, and an informational release—are not subject to non-delivery. Three Long Form Notices were mailed, and Claim Forms were available on the Settlement Website. *Id.* ¶¶ 19, 35.

*Claims.* Epiq has received 224,407 Claim Forms: 7,150 from the Booking Settlement Class and 209,657 from the Browsing Settlement Class. *Id.* ¶ 40.[3] Epiq is reviewing these claims for validity, duplication, and fraud, and will report the number of valid claims in its supplemental declaration. *See id.* ¶¶ 43-44, 52.

*Opt-outs.* Epiq has received zero requests for exclusion as of October 19, 2026. *Id.* ¶ 38. Class Counsel will file the list of Opt-Outs at least seven days before the Final Approval Hearing. ECF No. 45 ¶ 21.

*Objections and comments.* No Settlement Class Member has objected to the Settlement as of October 19, 2026. Azari Decl. ¶ 38. Plaintiff will respond to any objections in his reply, due November 19, 2026. ECF No. 45 ¶ 27. Plaintiff will also respond to any objection received after that date in a supplemental submission filed with Epiq's supplemental declaration.

**2. ATTORNEYS' FEES—All requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund. Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information, may be sufficient, provided that the declarations are adequately detailed. Counsel should be prepared to submit copies of detailed billing records if the court orders.**

**Regardless of when they are filed, requests for attorneys' fees must be noticed for the same date as the final approval hearing. If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.**

Class Counsel's Fee Motion, filed concurrently with this Motion and noticed for the December 3, 2026 Final Approval Hearing, requests $518,769.90 in attorneys' fees and $14,563.43 in costs and expenses, which together do not exceed $533,333.33, or one-third of the Total Settlement Fund. It is supported by detailed lodestar information, including the hours each biller spent on each activity and each biller's hourly rate. *See* Declaration of Stefan Bogdanovich in Support of Fee Motion ¶¶ 42-43 & Ex. 2. As of October 19, 2026, Class Counsel's lodestar is

[3] "There are 14,750 Claim Forms received that are still in process where the Settlement Classes have not been chosen. In addition, there are instances where Settlement Class Members may have elected both Booking Class and Browsing Class and therefore the Claim Count by category totals will not equal the total of all Claim Forms submitted." Azari Decl. ¶ 40 n.16.

$215,332.50 for 328.9 hours, reflecting a multiplier of approximately 2.41. *Id.* Class Counsel has also submitted its detailed billing records. *Id.* Ex. 2. Consistent with the Procedural Guidance, the Fee Motion refers to the case history and background facts set out in this Motion rather than repeating them.

3. **SERVICE AWARDS—All requests for service awards must be supported by evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards.**

Plaintiff requests a Service Award of $5,000, approximately 0.3% of the Total Settlement Fund, as disclosed in the Settlement and the Notice. Settl. ¶ 8.4; ECF No. 44, Ex. D, Question 13. The request is supported by evidence of the value Plaintiff provided—such as assisting with Class Counsel's investigation, providing insight and facts that allowed Class Counsel to litigate the action and negotiate the Settlement, and reviewing the Complaint and Settlement—and of the time he spent on the litigation. *See* Bogdanovich Decl. ¶¶ 31-34; Vasquez Decl. ¶¶ 4-6. The Settlement is not conditioned on the Service Award. Settl. ¶ 6.2. And because each fund is distributed to claimants after deducting only the Service Award actually awarded, any amount not awarded will be distributed to Settlement Class Members. *Id.* ¶¶ 1.5, 1.8, 2.1(b).

4. **ELECTRONIC VERSIONS—Electronic versions (Microsoft Word or Word Perfect) of all proposed orders and judgments should be submitted to the presiding judge's Proposed Order (PO) email address at the time they are filed.**

Concurrently with this Motion, Plaintiff is filing the [Proposed] Final Approval Order and [Proposed] Final Judgment on ECF in PDF form and emailing Word versions of each to pcppo@cand.uscourts.gov, as the Court's Civil Standing Order requires.

**<u>POST-DISTRIBUTION ACCOUNTING</u>**

1. **Within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, cy pres beneficiaries, and others pursuant to the settlement agreement), the parties should file a Post-Distribution Accounting (and post it on the settlement website), which provides the following information:**

    1. **The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and**

**percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the percentage of success for each method of notice and payment (if known), the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiffs' counsel's updated lodestar total, and the lodestar multiplier.**

**2. Where class members are entitled to non-monetary relief, such as discount coupons, debit cards, or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.**

**3. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class. Counsel should provide this information using the Court's Post-Distribution Accounting Form and file it as ECF event "Post-Distribution Accounting" under Civil Events > Other Filings > Other Documents.**

Class Counsel will file a Post-Distribution Accounting on the Court's Post-Distribution Accounting Form, under the designated ECF event, and post it on the Settlement Website within 21 days after the initial settlement checks become stale, and will file a supplemental accounting after any secondary distribution or *cy pres* distribution. Each accounting will include the information listed in subpart 1, separately for the Booking Settlement Fund and the Browsing Settlement Fund. Because the Settlement provides only monetary relief, subparts 2 and 3 do not apply.

**2. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.**

Class Counsel will appear at any such hearing the Court may set.